38

In the Matter of MARC H. LEITNER. COUNTY OF WESTCHESTER, Appellant; UNION FREE SCHOOL DISTRICT No. 4, TOWN OF GREENBURGH, et al., Respondents.

Second Department, November 6, 1972.

*John J. S. Mead, County Attorney* (*Peter F. Davidson* of counsel), for appellant.

*Wilbur J. Spitzer* for Joseph Leitner, petitioner-respondent.

*Spencer & Tunstead* (*William A. Wetzel* of counsel), for Union Free School District No. 4, Town of Greenburgh, respondent.

SHAPIRO, J.   This proceeding was commenced as a nonadversary matter in May, 1971 by the petitioner's filing of a State Education Department form in the Family Court, Westchester County, entitled '' Petition for the Education of a Handicapped Child ''.   In the petition he stated that his autistic son, Marc, aged 12, is severely handicapped and that he (the petitioner) is '' wholly unable to pay for the necessary education of said child.''   Appended to the petition was another State Education Department form, entitled '' Recommendation to the Family Court by School Superintendent, Physician, and Psychologist for Education of a Handicapped Child ''.   Signed by a physician and a psychologist, this document set forth the results of an examination of the youngster, a diagnosis and the conclusion that the child is able to attend school.   It also bore the recommendation of the Superintendent of Schools of the respondent Union

Free School District No. 4, Town of Greenburgh, that Marc be provided education and maintenance at Harmony Hills School, in Rhode Island, because the boy " requires maximum supervision and individualized instruction in residential setting."

After a hearing, an order was made by the Family Court directing that Marc be furnished education in the Harmony Hills School for a period of 52 weeks at the rate of $240 per week, including tuition and maintenance, the total cost not to exceed $12,500. On an appeal by the County of Westchester, we reversed that order and directed a new hearing in the Family Court " upon notice to the Attorney-General, the Commissioner of Education and the appropriate county and municipal authorities " (*Matter of Leitner,* 38 A D 2d 554). Service of the required notice upon the various parties was made and a hearing was held.[1] Thereafter the Family Court found that there were no educational facilities available in New York State capable of providing the handicapped infant with a proper education at any substantial savings to the taxpayers and therefore signed an order which requires that Marc be furnished education at the Harmony Hills School at a cost not to exceed $12,500 and that the cost be " made a charge upon the County of Westchester or the proper subdivision thereof, pursuant to statute."[2] The county has again appealed to this court (the county, by its brief, has limited its appeal to so much of the order as made the cost a charge upon it) and enforcement of the order has been stayed pursuant to CPLR 5519 (subd. [a], par. 1).

Following the hearing the Commissioner of Education approved the order made by the court. (The Commissioner had also approved the prior Family Court order.)

There is no dispute concerning the need for special educational services for the petitioner's son; nor is the $12,500 maximum amount set for such services disputed, the questions posed on this appeal being which governmental body or bodies must meet the tuition and maintenance costs mandated by the Family Court for Marc's special education and whether the Family Court was in error in not requiring the petitioner to contribute some part of that cost.

The language of the order assessing the expenses against " the County * * * or the proper subdivision thereof " appears

---

1. The Attorney-General did not appear at the hearing.

2. It is not clear from the record whether the $12,500 maximum cost is to be a one-time expenditure or an expenditure renewable from year to year so long as the youngster be deemed to need special educational services. For the purposes of this appeal we assume that it is the latter.

to have been adopted from section 232 (subd. [a], par. [2]) of the Family Court Act. Sections 231 and 232 of that act grant jurisdiction over " children with retarded mental development " (§ 231) and " physically handicapped children " (§ 232) to the Family Court (see, also, Family Ct. Act, § 115, subd. [b]). Section 232 (subd. [a], par. [1]) provides in pertinent part that " whenever a child within the jurisdiction of the court and under the provisions of this act appears to the court to be in need of special educational training," including " tuition or maintenance ", the court is empowered to order that such child be provided with educational training in " a hospital, or other suitable institution." The cost of the services is made " a charge upon the county or the proper subdivision thereof wherein the child is domiciled."

I conclude that the assessment by the Family Court of the expenses for the education of the petitioner's son in accordance with the provisions of section 232 (subd. [a], par. [1]) was incorrect and that these expenses must be borne in equal parts by the County of Westchester and the State of New York, in accordance with the directive of subdivision 2 of section 4403 of the Education Law (see *Matter of Peter H.*, 66 Misc 2d 1097).

Subdivision 1 of section 4403 of the Education Law places responsibility for the education of handicapped children and, if necessary, their maintenance in a special school on the State Education Department. The cost of such educational services is to be paid by the department " when not otherwise provided by parents, guardians, local authorities or by other sources, public or private." Subdivision 1 further declares that when the Family Court issues an order providing for necessary educational services for a handicapped child, the Commissioner of Education, if he approves such order, shall make known his approval to the governing body of the county of the child's residence. Subdivision 2 of this section, which is determinative of this phase of the present appeal, requires that the cost incurred in providing such necessary educational services, be they home-teaching, transportation, scholarship assistance in nonresidence schools, or tuition and maintenance in elementary, secondary, higher, special or technical schools, after approval by the Commissioner, *must be charged against the county of the handicapped child's residence and the State, in equal shares.*

We held in our prior decision remanding this matter for a further hearing that the Family Court has original jurisdiction over physically handicapped and mentally defective or retarded children, pursuant to sections 115 (subd. [b]) and 232

of the Family Court Act. The latter section invests the court with broad discretion to provide a handicapped youngster with special educational training in appropriate cases. Thus, the Family Court's jurisdiction and authority in dealing with handicapped youngsters is rooted in section 232 and petitions on behalf of such youngsters must be deemed to be brought pursuant to that section.

Once the Commissioner of Education approves a Family Court order made pursuant to section 232 of the Family Court Act, section 4403 of the Education Law, which is in essence a cost allocation provision, comes into play. The latter section has the effect of requiring the county, in the first instance, to pay the cost of a child's court-mandated special education, and the State thereafter to reimburse the county for one half of that cost. The method of effectuating reimbursement is set forth in detail in subdivision 3 of section 4403 of the Education Law but its mechanics are not of concern on this appeal. It is sufficient to note that, as applicable to this case, the County of Westchester is responsible for the original payment of the entire amount, with one-half reimbursement to be made to the county by the State, at certain intervals as set forth in subdivision 3 of section 4403, from money specifically appropriated for that purpose by the Legislature. Thus, the language in the order appealed from to the effect that Westchester County, *or a proper subdivision of the county,* is chargeable with the cost of Marc's special education became inappropriate *once the Commissioner of Education approved the Family Court order.* With that approval the express provision of subdivision 2 of section 4403 of the Education Law controlled. Stated differently, the effect of the Commissioner's approval of the Family Court order was to assume on behalf of the State one half of the financial burden initially imposed on Westchester County. If State Education Department approval of a special education order pursuant to section 232 of the Family Court Act is not given, " the county or the proper subdivision thereof " (*id.,* subd. [a], par. [1]) remains liable for the entire cost. The question of what constitutes a " proper subdivision " need not be passed upon in this case, as the Commissioner of Education has approved the Family Court's order and has thereby assumed payment of one half of the $12,500 cost.

In this connection, it should be noted, in passing, that sections 4404 and 4406 of the Education Law impose duties on school boards with regard to furnishing suitable educational facilities, special classes, transportation to and from such classes, etc., for

handicapped children. Nothing contained in this opinion is intended in any way to relieve them of their statutory responsibilities, for we are concerned here with a situation (one of a presumably limited number) in which the Family Court determines that special educational training is required of such a nature and extent that it is beyond the scope of what could reasonably be provided by an individual school district or a number of districts working together.

It may not be amiss to note that the statutory scheme for the ordering of special educational services for a handicapped child through the Family Court and the allocation of the costs of those services is, at best, cumbersome, and at worst, unclear and unnecessarily complex. The two statutes directly involved in this proceeding make no explicit reference to one another. Section 232 of the Family Court Act has its antecedent in section 24 of the former Children's Court Act (originally enacted as section 23 [L. 1922, ch. 547]). As originally enacted, this section made no reference to special educational training, but referred only to medical and surgical care and made the cost of such care a charge upon the State, the county or the proper subdivision thereof. In 1925 the statute was amended (L. 1925, ch. 227, § 1) to set forth, for the first time, a definition of a '' physically handicapped child '', as distinguished from a child who is a '' mental defective '' as that term was defined in subdivision 5 of section 2 of the former Mental Deficiency Law (L. 1919, ch. 633). By a subsequent amendment (L. 1926, ch. 817, § 4) the Children's Court was empowered to order '' special educational training '' in an appropriate case. However, it was not until 1961 that the concept of '' a child with retarded mental development '' was added to the Children's Court Act (L. 1961, ch. 954, § 1). These definitions were carried over into section 232 of the Family Court Act when that statute was enacted in 1962 (L. 1962, ch. 686) and they remain in effect today (see Family Ct. Act, §§ 231, 232).

When section 4403 of the Education Law was enacted in 1956, it applied only to '' physically handicapped children '' (L. 1956, ch. 722, § 6), but in 1967 the distinction between mental and physical handicaps was dropped and the section now applies to all handicapped children (L. 1967, ch. 786, § 3). The definitional dichotomy between section 232 of the Family Court Act and section 4403 of the Education Law has resulted, not in a well-integrated legislative scheme for dealing with the special educational needs of handicapped children, but rather in the existence of isolated statutes dealing with the same subject matter.

The County of Westchester also contends the court below erred in not requiring Marc's parents to contribute toward the cost of the court-ordered educational services to the extent of their financial ability. In support of that contention the county points to that portion of subdivision 1 of section 4403 of the Education Law which declares that the State Education Department has the duty of providing for the education of handicapped children in whole or in part from funds appropriated to it "when not otherwise provided by parents, guardians, local authorities or by other sources, public or private." The county also refers to section 234 of the Family Court Act, entitled "Educational service in counties within the city of New York", subdivision (b) of which permits the Family Court in the City of New York, if it has made an order for special educational services for a handicapped child, to also order that "the person or persons liable under the law to support such child" pay a part or all of the cost of the services.

Contending further that the educational services encompassed by the order appealed from are, in the largest part, for Marc's maintenance at Harmony Hills, the county asserts that sending a child to a residential school cannot relieve the parents of their well-settled duty to provide their child with shelter, food and clothing and that relieving parents of handicapped children of this duty would create a windfall for them which parents of normal children do not enjoy. This issue is moot in the present case, as the Commissioner of Education approved the Family Court order without objecting to the court's failure to require a parental contribution. Furthermore, section 234 is not applicable in this case, as that section is specifically limited in its application to cases in New York City. Moreover, the petitioner swore in his 1971 petition initiating this proceeding that he was wholly unable to pay for the necessary special education of his child. Nothing in subdivision 1 of section 4403 of the Education Law makes parental contribution mandatory. That subdivision places the responsibility for providing for the education of handicapped children on the State Education Department. The language in subdivision 1 of section 4403 relied on by the county, referred to in the paragraph just above, serves merely to make clear that the Education Department is relieved of this responsibility when the cost of the education of a handicapped child has already been met from other sources or by other agencies. That situation does not obtain in the present case and the cost

allocation provisions of subdivision 2 of section 4403 of the Education Law govern the payment of the court-ordered costs.[3]

In accordance with the provisions of subdivision 2 of section 4403 of the Education Law, the order appealed from should therefore be modified, on the law, to provide that the court-ordered cost of the special educational services to be furnished the infant Marc be paid in the first instance by the County of Westchester, which is to be reimbursed to the extent of one half of such payment by the State of New York, and, as so modified, the order should be affirmed insofar as appealed from, without costs.

MUNDER, J. (concurring in the result). I agree with the observation in the opinion by Mr. Justice SHAPIRO that the statutory scheme for the ordering of special educational services for a handicapped child through the Family Court and the allocation of the costs of those services " is, at best, cumbersome, and at worst, unclear and unnecessarily complex." I also conclude that in this case there probably was enough proof of the parents' indigency to excuse them from contributing toward the cost of the court-ordered services.

I cannot subscribe, however, to the reasoning that approval of the Family Court order by the Commissioner of Education, without objection, makes the issue " moot " as far as Westchester County is concerned. That would mean in *every* case involving subdivision 1 of section 4403 of the Education Law the county would be precluded from raising the issue of parental contribution unless it were raised by the Commissioner of Education. It is true, as noted by my colleague, that nothing in subdivision 1 of section 4403 makes parental contribution mandatory. But that is so because each case presents a different financial picture. Parental contribution should depend on the ability to pay and not whether the Commissioner objects.

RABIN, P. J., HOPKINS and LATHAM, JJ., concur with SHAPIRO, J.; MUNDER, J., concurs in result, with a separate opinion.

Order modified, on the law, so as to add thereto a provision that, while the costs shall be paid in the first instance by the

---

3. We need not pass upon the applicability of section 4407 of the Education Law to this case. Upon the oral argument of this appeal the attorneys for the parties stipulated that this section does not apply. At any rate, nothing contained in the section purports to limit the authority of the Family Court to promulgate a suitable order for special educational training for a handicapped child, and this is so even if the order requires the expenditure of an amount of money in excess of the maximum yearly amount set forth in the section.

County of Westchester, said county shall be reimbursed to the extent of one half of its payments by the State of New York. As so modified, order affirmed insofar as appealed from, without costs.