Hugh R Elwyn, J.
In each of the above-entitled proceedings the petitioner seeks an order pursuant to section 232 of the Family Court Act for the education of a handicappéd child in a residential treatment center. Neither child is "physically” handicapped. The children are, however, according to the certificate of a physician and psychologist, emotionally disturbed and hence handicapped.
Specifically, in the case of Patrick P. examination by a physician and psychologist shows, "poor self-image; unstable home situation; agressive and hostile feelings toward women; difficulty in control and expression of feelings”. Diagnosis: "Adjustment reaction of childhood”. In answer to the question, "Is child able to attend school?”, the certificate and recommendation (Form HC-3) states, "Yes, in a residential treatment center”. The petition seeks court approval of an expenditure of $13,200 for the child’s attendance at Devereaux Foundation at Devon, Pa., because, it is said, "child’s handicapping condition necessitates a residential placement.”
In the case of George F., examination by a physician and psychologist shows "restless, insecure, highly manipulative, pre-delinquent; aggressive way of coping with anger and feelings of distrust in adults; weak self concept.” Diagnosis: "Behavior disorder of adolescence”. In answer to the question, "Is child able to attend school?”, the certificate and recommendation (Form HC-3) states: "Special Education — Class for emotionally disturbed”. The petition seeks court approval of an expenditure of $8,626.98 for the child’s attendance at the *831 Children’s Home of Kingston, New York, because, it is said, the child is "unable to function in own home.”
The most liberal[1] or even strained interpretation of the phrase "physically handicapped” cannot qualify either of these children as a "physically handicapped child” as that phrase is defined in subdivision (c) of section 232 of the Family Court Act.[2]
A literal reading of section 232 of the Family Court Act, which is the source of the Family Court’s authority to entertain these applications (Matter of Leitner, 38 AD2d 554; Matter of Leitner, 40 AD2d 38, 40-41), and which provides that "the family court has jurisdiction over physically handicapped children” as well as subdivision b of section 115 of the Family Court Act which similarly provides that the Family Court has jurisdiction over "proceedings concerning physically handicapped and mentally defective and retarded children” would preclude the court from entertaining these applications.
Indeed, because the Family Court is acknowledged to be a court of limited jurisdiction which cannot exercise powers beyond those granted to it by statute (Loeb v Loeb, 14 AD2d 270; Matter of Borkowski, 38 AD2d 752; Matter of Hunter v Hunter, 41 AD2d 772; Matter of Infanto v Infanto, 66 Misc 2d 699, 702, 704; Matter of Donne v Pace, 74 Misc 2d 127), two Family Court Judges of Queens County have found that by reason of the failure of the Legislature to amend section 232 of the Family Court Act to eliminate all reference to the qualifying adverb "physically” as was done with section 4401 *832 and 4403 of the Education Law "that it is the legislative intent to provide special educational services under section 232 only to those children who are physically handicapped, i.e., handicapped 'by reason of a physical defect or infirmity’ (Family Court Act, § 232, subd [c]).” Absent a physical defect or infirmity the court is held to be without jurisdiction to provide educational services for an otherwise handicapped child. (Matter of Joseph S., 81 Misc 2d 152, 156; Matter of Mecca, 82 Misc 2d 497.)
While the conclusion flowing from the syllogism cannot be faulted as logically incorrect, nevertheless, I cannot accept the conclusion as a correct or intended result. Section 4403 of the Education Law as originally enacted in 1956 applied only to "physically handicapped children” (L 1956, ch 722, § 6). In 1967 the distinction between mental and physically handicapped children was dropped through the elimination of the words, "physical” and "physically” and the statute as now in effect applies to all handicapped children (L 1967, ch 786, § 3).[3]
The purpose to be accomplished by the amendments made by chapter 786 of the Laws of 1967 is clearly stated in the Legislative Memorandum of the State Department of Education accompanying the bill. The memorandum states:
"The definition of a 'handicapped child’ is amended to include those now defined as 'physically handicapped’, 'mentally retarded’ and 'emotionally disturbed’ * * *
"Section 4403, procedure through family court now applicable to physically handicapped children only, is expanded to include all 'handicapped children’ as defined in the bill.” (McKinney’s 1967 Session Laws of NY, pp 1948-1499.)
In addition to amending article 89 of the Education Law to redefine a "handicapped child” to include the child who is handicapped for mental and emotional reasons as well as physical, the Legislature re-enacted section 4403 entitled "Procedure through family court; cost of education services.”[4]
*833 Subdivision 1 of section 4403 of the Education Law now provides that, "The state education department shall have the power and the duty to provide within the limits of the appropriation made therefor, home-teaching, transportation, scholarships in non-residence schools, tuition or maintenance and •tuition in elementary, secondary, higher, special and technical schools, for handicapped children in whole or in part from funds of the department, when not otherwise provided by parents, guardians, local authorities or by other sources, public or private.” (Emphasis supplied.)[5]
In spite of the 1967 amendments to the Education Law the responsibility for the ordering of special educational services for handicapped children, the governmental authority responsible for payment and eligibility for consideration as a handicapped child are still unclear as evidenced by the conflict in the authorities. The law has been severely criticized for its lack of clarity. In Matter of Leitner (40 AD2d 38, 42, supra) the Appellate Division (Second Dept.), said in passing: "It may not be amiss to note that the statutory scheme for ordering of special educational services for a handicapped child through the Family Court and the allocation of the costs of those services is, at best, cumbersome, and at worst, unclear and unnecessarily complex. The two statutes directly involved in this proceeding make no explicit reference to one another.”
In Matter of Daber (71 Misc 2d 303-304) Family Court Judge Saul Moskoff commenting upon the same statutes wrote: "In passing, it may be noted that the present statutory law is a mumbo jumbo, unconsolidated and inartistically promulgated. Revision would be extremely appropriate so as to clarify the ambiguity found in the laws as they exist today.” And in Matter of Stein (81 Misc 2d 91, 92) Family Court Judge Saul Moskoff repeated his earlier criticism, saying: "The law in the somewhat newly developed area relating to the education of handicapped children at public expense appears to be fluid and flexible, due in no small measure to the ambiguous and unclear statutory recitation of the rights of handicapped children and the responsibilities and *834 obligations of parents and governmental and educational authorities.”
Just exactly what interplay there is or should be between section 232 of the Family Court Act and sections 4401 and 4403 and 4407 of the Education Law is not too clear. On the one hand there is authority which categorically rejects the argument that in making a determination under section 232 of the Family Court Act the court should also consider the provisions of sections 4403 and 4407 of the Education Law. Pointing out that section 232 of the Family Court Act makes no reference to either section of the Education Law, Judge Leo Glasser in Matter of Richard C. (75 Misc 2d 517) held that the only relevant statute controlling the court’s determination was section 232 of the Family Court Act and those sections of the Education Law, Public Health Law and the Administrative Code of the City of New York which amplified the definition of "physically handicapped” with the result that the other sections of the Education Law were held to have no substantial bearing upon the issues in the proceeding. A similar conclusion with respect to section 4407 of the Education Law was reached by Judge Saul Moskoff in Matter of Daber (71 Misc 2d 303, 305, supra) who held that section 4407 "relates to an administrative procedure and has no relationship to a proceeding brought in the Family Court.”
On the other hand, there is dicta of higher authority which points in the other direction. In Matter of Leitner (40 AD2d 38, 42, supra) the Appellate Division (Second Dept.) in commenting upon the same sections of the Family Court Act and the Education Law had this to say: "When section 4403 of the Education Law was enacted in 1956, it applied only to 'physically handicapped children’ (L 1956, ch 722, § 6), but in 1967 the distinction between mental and physical handicaps was dropped and the statute now applies to all handicapped children (L 1967, ch 786, § 3). The definitional dichotomy between section 232 of the Family Court Act and section 4403 of the Education Law has resulted, not in a well-integrated legislative scheme for dealing with the special education needs of handicapped children, but rather in the existence of isolated statutes dealing with the same subject matter.”
Consequently, contrary to those decisions which find no relationship between section 232 of the Family Court Act and section 4403 of the Education Law, I find them to be in pari materia.
*835 "The phrase ’in pari materia’ is applied to statutes or general laws, usually enacted at different times but with reference to the same subject matter.
”’In pari materiawhen literally translated, means upon the same matter or subject * * * Hence statutes which relate to the same person or thing or to the same class of persons or things are said to be in ’pari materia ’ and are to be construed together in accordance with the doctrine hereinafter stated in subdivision b of this section.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 221, subd a.)
Subdivision b entitled "Construction with other statutes” states:
"In accordance with general rules of construction, statutes which are in pari materia are to be construed together as though forming part of the same statute.
"As is shown in a preceding paragraph it is the duty of the courts to construe all parts of a statute together, and the same fundamental canon of interpretation is extended to statutes in pari materia. Thus reference may be made to another statute which is in pari materia to aid in determining the legislative intent and purpose.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 221, subd b.)
Upon applying these canons of construction to section 232 of the Family Court Act and section 4403 of the Education Law as last amended by chapter 786 of the Laws of 1967 a legislative intent to make it the duty of the State Department of Education to furnish special educational services to all handicapped children whether their handicap be denominated physical, mental or emotional is plainly discernible. Moreover, the machinery by which this policy was to be implemented was by appropriate procedures through the Family Court.
For the Legislature to state plainly its intent and policy to furnish special educational services to all handicapped children and then to ascribe to the Legislature an intent to frustrate its own declared policy by failing to provide the machinery by which that policy could be implemented is to attribute to it a duplicity of purpose which is unworthy of it. "The courts will not by statutory construction impute an intent to act in bad faith to the Legislature, and the imputation of bad faith to the lawmakers is to be avoided by the courts, if possible.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 151.)
*836 Consequently, I find it inconceivable that the Family Court should consider itself to be so hobbled by the word "physically” as to deprive itself of the power and authority to order special educational services for the mentally retarded or emotionally disturbed child whom the Legislature so plainly intended to aid. It is not in keeping with the constitutional mandate given this court which has jurisdiction over actions and proceedings for "the protection, treatment, correction and commitment of those minors who are in need of the exercise of the authority of the. court because of circumstances of neglect, delinquency or dependency, as the legislature may determine” (New York Const, art VI, § 13, subd b) to unnecessarily limit or restrict its authority to help the neglected, the handicapped and the helpless. As an illustration of how far this court may properly go in aiding the neglected and handicapped child even though the cause for the court’s intervention was not life threatening, reference is had to Matter of Sampson (65 Misc 2d 658, affd 37 AD2d 668, affd 29 NY2d 900).
In short, to me it makes absolutely no sense at all that the Legislature should in plain and unequivocal language declare it the power and the duty of the State Education Department to provide for the special education of all handicapped children by means of a procedure through the Family Court and then intentionally frustrate its own purpose by failing to amend appropriately the Family Court Act so as to give to the Family Court, a court of limited jurisdiction, the power to order special educational services for the mentally handicapped and emotionally disturbed child as well as the physically handicapped child. Since the court should not impute bad faith to the Legislature, I can only ascribe the omission to legislative oversight ratherMdian design.
Such a construction of statutes which are in pari materia is not without precedent. Directly in point is Matter of Charilyn "N” (46 AD2d 65) wherein the Appellate Division (Third Dept) read into section 232 of the Family Court Act a provision from section 234 of the Family Court Act to require parental contribution to the cost of a handicapped child’s special education, although section 232 itself contains no such provision. The court said (p 66): "While conceding that the 1964 amendment to section 232 of the Family Court Act (L. 1964, ch. 253, § 6) lacks the provision which theretofore authorized the Family Court to require parents to pay all or a part of their *837 children’s educational expenses, we deem this omission to be legislative oversight. Any other interpretation would, in effect, require parental contributions in New York City, pursuant to section 234 of the Family Court Act, while exempting parents elsewhere in the State, and such an anomalous result would be in clear violation of the equal protection clauses of both the New York and the United States Constitutions.”
. Similarly, the failure of the Legislature to amend the Uniform Support of Dependents Law (Domestic Relations Law, art 3A, §§ 30-43) to eliminate the responsibility of a child to contribute to the support of a nonresident parent, the responsibility of a parent to contribute to the support of a nonresident adult child and the responsibility of grandparents to contribute to the support of nonresident grandchildren long after similar liabilities were removed from residents bearing similar relationship by appropriate amendments to section 101 of the Social Services Law and sections 413, 415 and 443 of the Family Court Act (L 1966, ch 256; L 1965, ch 674) in order to implement the medical assistance provisions of the Federal Social Security Act (Medicare) were all held to be due to legislative oversight (Matter of State Welfare Comr. v Mintz, 28 AD2d 14 [nonresident parent]; Matter of Jones v Jones, 51 Misc 2d 610; Matter of Dabbs v Burrell, 53 Misc 2d 349 [nonresident adult child]; Matter of Lenti v Lenti, 48 Misc 2d 206 [grandparents]; cf. Martin v Martin, 58 Misc 2d 459, 468).
I conclude therefore that it is only through legislative oversight in failing to eliminate the qualifying adverb "physically” from section 232 of the Family Court Act that the court appears to lack authority to order special educational services for the mentally retarded or emotionally disturbed child; that it was the intention of the Legislature that the Family Court should have that power and that until such time as the Legislature acts to clarify the powers of the court, the court in the interests of those mentally and emotionally handicapped children who would otherwise be without special educational services should assume the power and authority to act in their interests and order for their benefit what the Legislature has declared it to be the duty of the Education Department to provide. The applications in each case are approved.
I am aware that this is a bold step for a court of limited jurisdiction to take and may appear to some as judicial legislation. If so, it is only in keeping with a trend toward the *838 solution of social problems through what may be termed judicial activism which has grown apace in this country since the United States Supreme Court in 1954 decided that separate but equal schools were inherently unequal (Brown v Board of Educ., 347 US 483). (See U. S. News and World Report, Jan 19, 1976, The Power of Our Judges.)

. See Matter of Leitner (40 AD2d 38) where an autistic child was found qualified to receive special education as a physically handicapped child.

. " 'Physically handicapped child’ means a person under twenty-one years of age who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, is or may be expected to be totally or partially incapacitated for education or for remunerative occupation, as provided in the education law, or is physically handicapped, as provided in section two thousand five hundred eighty-one of the public health law” (Family Ct Act, § 232[c]).
"As used in this article: 1. 'Physically handicapped children’ means any persons under twenty-one years of age who are handicapped by reason of a defect or disability, whether congenital or acquired by accident, injury, or disease, or who are suffering from long-term disease, including, but without limiting the generality of the foregoing, cystic fibrosis, muscular dystrophy, nephrosis, rheumatic fever and rheumatic heart disease, blood dyscrasies, cancer, brain injured, and chronic asthma, or from any disease or condition likely to result in a handicap in the absence of treatment, provided, however, no child shall be deprived of a service under the provisions of this chapter solely because of the degree of mental retardation.” (Public Health Law, § 2581.)

. (Education Law, § 4401.)
"Definitions
"As referred to in this article
"1. A 'handicapped child’ is one who, because of mental, physical or emotional reasons, cannot be educated in regular classes but can benefit by special services and programs to include, but not limited to, transportation, the payment of tuition to boards of cooperative educational services and public school districts, home teaching, special classes, special teachers, and resource rooms.”

. "A heading of a portion of a statute such as a chapter or a section usually is not *833 a part of the act and does not extend or restrict the language contained in the body of the statute, although it may be resorted to as an aid in ascertainment of the legislative intent where a provision is ambiguous in meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 123, subd b.)

. The 1967 amendment (L 1967, ch 786) eliminated the adverb, "physically” before the words "handicapped children”.