IN RE MARCUS PETTY, minor.

STATE BOARD OF EDUCATION, appellee, v. HOWARD PETTY et al., appellants.

No. 47448.

(Reported in 41 N.W. 2d 672)

MARCH 7, 1950.

R. B. Hawkins, of Leon, for appellants.

Robert L. Larson, Attorney General, Oscar Strauss, Assistant Attorney General, and Dio S. McGinnis, County Attorney, for appellee.

WENNERSTRUM, J.—Marcus Petty is a minor child who is deaf. In a proceeding brought under the provisions of sections 299.18 to 299.20, 1946 Code, the trial court entered an order requiring the attendance of this child at the Iowa School for the Deaf at Council Bluffs. The order also required his parents to take him to the school and that the child continue in attendance there. The parents and their minor child have appealed.

The record shows that the original application for the commitment of the child to the school for the deaf was filed by a representative of the State Board of Education on July 21, 1947. A hearing was had before Honorable T. W. Miles, one of the judges of the third judicial district, on or about August 5, 1947 and on August 27, 1948 that court signed an order directing that the child's parents be required to take him to the school for the deaf by September 8 or 9, 1948 and that the child attend this school as provided for under the compulsory education statutes relative to handicapped children. This order was filed September 3, 1948. On September 9, 1948 the parents of the minor child filed an application for a rehearing and on this same day there was also filed an order signed by Judge Miles staying the commitment of the minor child to the state institution and directing that the matter be reheard by one of the other judges of the third judicial district and set the time of this subsequent hearing for September 11, 1948. On this last-named date the parties appeared in court before Honorable Charles J. Lewis, one of the other judges of the third judicial district. At that time the appellee appeared by Dio S. McGinnis, county attorney, and the appellants appeared in person and by their attorney, R. B. Hawkins. In the earlier proceedings the parents and child were not represented by counsel and there was no record made of the evidence then presented.

The particular statutes involved in this appeal are as follows:

"299.18 Education—state school. Children over seven and under nineteen years of age who are so deaf or blind [or severely handicapped] as *to be unable to obtain an education in the common schools* shall be sent to the proper state school therefor, unless exempted, and any person having such a child under his control or custody shall see that such child attends such school during the scholastic year." (Italics supplied.)

"299.19 Proceeding against parent. Upon the failure of any person having the custody and control of such child to require its attendance as provided in section 299.18, the state board of education may make application to the district court or the juvenile court of the county in which such person resides for an order requiring such person to compel the attendance of such child at the proper state institution."

"299.20 Order. Upon the filing of the application mentioned in section 299.19, the time of hearing shall be determined by the juvenile court or the district court. If, upon hearing, the court determines that the person required to appear has the custody and control of a child who should be required to attend a state school under section 299.18, the court shall make an order requiring such person to keep such child in attendance at such school."

At the time of the trial on September 11, 1948 Marcus Petty was 9 years of age. His parents, Howard Petty and Izola Petty, then lived on a farm in Decatur County. During the school year of 1947-1948 the child attended a country school near his home. He had not previously attended any other school and the type of work given him during this one year was that of a preliminary and primary grade nature.

It is the contention of the appellants that the appellee has not proved that the deaf child is unable to obtain an education in the common school that he might attend in Decatur County and consequently the court was not justified in ordering the parents to place the child in the state school for the deaf.

We have concluded that the State Board of Education has presented sufficient evidence to justify the order made by the trial court.

At the time the child started to a rural school near his home in September 1947 he was 8 years of age. It is shown that his teacher during this first year sought to instruct him by association with objects, by physical demonstration and by means of visual aids. This teacher testified that the child had made above average grades but that in teaching him he had not taught him in the same manner as one would teach a normal child. It is shown that he had taught him to say certain words and a few of his letters. He could write all of the alphabet. It is also shown that the child had made some progress in his study of addition and subtraction. This was also done through visual demonstration. The teacher in this primary grade was a high school graduate and had no special training for instructing a deaf person. He apparently took considerable interest in the child. There was testimony by this teacher that it was his opinion the child could obtain an average education in the country schools. However, the true situation as to the manner in which the child's schooling was carried on during his first year, as well as his possible schooling in later years, is disclosed by the following testimony given by this teacher:

"I know that this boy understands these writing lessons and these words because he can do them. I copy at the top of every page. He copies those but he knew what the words are. I know he knows what the words are because I can point to phonograph and he can go over and touch the phonograph. He knows what that is. I can point to the word sing and he knows what it means. If he wanted to tell me something about the phonograph or song I don't suppose he could do so unless he could show me. He knows by associating objects with something I have written that is what that thing is and if he wanted me to play it he would take me over and touch that phonograph and show me he wanted me to play that. He could show me what he wanted me to do, and what he didn't. I could write the word door here and have him go to the door. I have used that word. There are several words that he and I haven't used. * * * Q. Do you have facilities like this to carry them all through the eighth grade, to teach them? A. No."

It is further shown that the young lady who was to be the child's instructor during the subsequent year had taken no special training for teaching a deaf child.

The superintendent of the school for the deaf testified that the methods used by the teacher were not the proper ones to educate a deaf child and from the testimony presented he stated that the teacher was apparently unfamiliar with the correct method of teaching such an individual. He also stated that the instruction of deaf children was a highly technical process and that the child's schooling as far as it had gone was far from adequate. He stated that special instruction was necessary to develop the use of the English language by a deaf child.

It is shown that a representative of the State Board of Education had given consideration for several years to the problem of this child's education. She had first seen him when he was 3 years of age. Later as a result of suggestions made by this party, the county nurse and the county superintendent of schools of Decatur County, the parents took the child to the State University Hospital at Iowa City on or about October 22, 1945. Evidence was not presented as to the results of the examination made there. However, in the hearing before the trial court it was the recommendation of the representative of the State Board of Education, based on the investigation of the home life and the educational opportunities afforded the child, that he should be sent to the school for the deaf. This party further stated that as a result of her experience during twenty-five years in the type of work she did she had never known of a deaf child who was able to obtain an adequate education in a rural or public school.

I. "To obtain an education in the common schools" as applied to the facts in this case should not be considered generally but must be applied to the specific problem presented. To obtain an education for a normal child with the facilities presented in an average school would mean one thing but to obtain an education for a handicapped child, particularly one who is deaf, would mean another thing. A child who has a physical defect necessarily must receive a different type of instruction than one who is not handicapped. As disclosed by the testimony heretofore set forth it is apparent that the country schools which

the child would attend are not in a position to provide training for the educational development of a deaf child.

██ In the case of New Britain Trust Co. v. Stoddard, 120 Conn. 123, 127, 179 A. 642, 643, education is defined as a broad and comprehensive term with a variable and indefinite meaning, and in its broadest significance comprehends the acquisition of all knowledge tending to develop and train the individual. " 'Education' is a broad term, and includes all knowledge, if we take it in its full, and not in its legal or popular, sense. Whatever we learn by observation, by conversation, or by other means, away from what has been implanted by nature, is education. In fact, everything not known intuitively and instinctively is education * * *." Cook v. State, 90 Tenn. 407, 409, 16 S.W. 471, 472, 13 L. R. A. 183. Education has also been defined in the case of Mount Hermon Boys' School v. Inhabitants of Gill, 145 Mass. 139, 146, 13 N.E. 354, 357 as "a broad and comprehensive term. It has been defined as 'the process of developing and training the powers and capabilities of human beings.' To educate, according to one of Webster's definitions, is 'to prepare and fit for any calling or business, or for activity and usefulness in life.' Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all."

With the physical handicaps that this minor child has it does not appear that he can obtain, in the country schools that he would attend, an adequate education. The fact that the child has no hearing necessarily requires that he have a more specialized type of education than a normal child or individual. To fail to provide a handicapped child with all the known educational opportunities within his reach would necessarily result in his being at a disadvantage in meeting the problem of making a living and enjoying the privileges of a reasonable education. Under the circumstances education in this child's case should be of such a nature as to develop his self-reliance and make him nondependent on his family or the state. The common schools which he would have to attend are shown not to possess the facilities which would develop this self-reliance and ability to adequately provide for himself as he grows into maturity and manhood.

II. Although the primary question involved in this appeal is whether the child could be provided with proper educational facilities in the common schools so that he can obtain an education and is not a child custody case yet we believe that the rule heretofore universally announced in such cases to the effect that the best interest of the child should be considered is also applicable in our determination of this case. It is our conclusion that the best interest of the child would be served by his attendance at a school where his education could be adequately developed in the light of his handicap. We believe circumstances are present in the instant case that justify the state, through its Board of Education, in seeking to educate the child here in question to the best of its capabilities in a state institution. This does not mean that the child is being taken from his parents and that they are being deprived of his custody. It merely means that the state is desirous of helping them in solving a difficult problem. It has taken no hasty action. Its representatives have studied this problem for at least six years. Judge Miles delayed the filing of the first order of commitment for over a year after the first hearing. It was only when it became apparent that the proper educational facilities were not afforded the child that the representative of the State Board of Education acted. The trial courts have given careful consideration to the problem. We are conscious of the deep love that the parents have for their son. However, this love and devotion will not or should not be lessened by the absence of the child while he is obtaining proper educational development. Parents are prone to make sacrifices for the welfare of a child. That is their responsibility and duty in the instant case.

We are satisfied that the best interests of the child justified the trial court in entering the order it did and that the record amply shows that this handicapped child was unable to obtain an education in the common schools which would be provided for his education and training. We therefore affirm.—Affirmed.

All JUSTICES concur.