Andelena **PINKERTON**, by her next friend Charlotte Pinkerton, Plaintiff,

v.

**James E. MOYE et al., Defendants.**

**Civ. A. No. 80–0016.**

United States District Court, W. D. Virginia, Danville Division.

Feb. 17, 1981.

Michael K. Crookshank, Danville, Va., for plaintiff.

Anthony Giorno, Commonwealth's Atty., Patrick County, Stuart, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This is an action against members of the Patrick County School Board, the Superintendent of Patrick County Schools, and the Superintendent of the Virginia Department of Education brought by Charlotte Pinkerton in behalf of her daughter Andelena Pinkerton, a twelve year old fifth grader suffering from learning disabilities, to compel them to provide certain learning-disability educational services at the Woolwine Elementary School in Patrick County, Virginia. The action is brought pursuant to § 615 of the Education for All Handicapped Children Act of 1975 (E.A.H.C.A.), Title 20 U.S.C. § 1415; § 504 of the Rehabilitation Act of 1973, Title 29 U.S.C. § 794; and Title

42 U.S.C. § 1983. By agreement of the parties, the case is submitted for a determination from the administrative record together with documentary evidence filed in this court.

## I. BACKGROUND

In 1975, while attending school in Franklin County, Andelena was identified as having a learning disability with an emotional overlay and in need of special education. In July of 1977, she moved with her family to Patrick County and began attending classes at the Woolwine Elementary School in Woolwine, Virginia. Because of Mrs. Pinkerton's dissatisfaction with Andelena's educational program, she was enrolled in private programs at Ferrum College, Ferrum, Virginia, during the summers of 1978 and 1979, where she was assisted and tutored by a psychologist, Dr. Gene Watson. Dr. Watson determined that Andelena should be placed in a "self-contained" learning disabilities program where she could receive training in visual sequential memory, auditory sequential memory, arithmetic, and other subjects. A "self-contained" program is a program in which the child receives special education for three hours or more during the school day. In 1979, an Individualized Education Plan (IEP) was formulated for Andelena as required by the Education for All Handicapped Children Act of 1975, Title 20 U.S.C. § 1414(a)(5); Title 45 C.F.R. § 121a.341 *et seq.*[1] To meet her special educational needs, the plan called for placement of Andelena in a "self-contained" learning disabilities class. However, the only such class in Patrick County is located at the Stuart Elementary School in Stuart, Virginia. Woolwine Elementary is approximately 19 miles from plaintiff's home and is in her school district. Stuart Elementary is approximately 25 miles from her home and is in another school district.

Mrs. Pinkerton objected to the placement of Andelena at Stuart Elementary contending, in essence, that Andelena's emotional attachment to Woolwine Elementary would

1. *See* n. 6, *infra.*

preclude maximization of her educational capabilities at Stuart. She demanded that a "self-contained" learning disabilities program be created at the Woolwine School "in order to insure an appropriate educational placement for Andelena." When the Board refused, Mrs. Pinkerton requested a hearing as required by federal and state law.[2] Title 20 U.S.C. § 1415(b)(2), Title 45 C.F.R. § 121a.506; Va.Code Ann. § 22.1–214; Va. Reg., Ch. V B 8 (1978). The hearing was held on July 2, 1979, and in a decision by the hearing officer on July 19, the Stuart School program and the transportation to that program were found to be "suitable," and Mrs. Pinkerton's claim that the Patrick County School Board was required to establish a "self-contained" learning disabilities class at the Woolwine Elementary School, accordingly, was rejected. The decision was then appealed in accordance with established procedure to the Virginia Board of Education where it was reviewed by a hearing officer designated by the Board. See Title 20 U.S.C. § 1415(c); Title 45 C.F.R. § 120a.510; Va.Reg., Ch. V B 8. A hearing officer for the State Board of Education conducted two hearings, one on September 13, 1979, and one on November 20 of that year. In an opinion entered by the hearing officer on November 30, "the facilities offered by Patrick County [were found to be] appropriate . . . ." Mrs. Pinkerton, in turn, commenced this action on February 8, 1980.

## II. THE ALL HANDICAPPED CHILDREN ACT OF 1975 CLAIM

### A. FINDINGS OF FACT

"Judicial review of administrative decisions concerning the education of a handicapped child is governed by 20 U.S.C. § 1415(e)(2). This statute provides that any party aggrieved by a final administrative decision may bring an action in either state or federal court. The statute directs the court to consider the administrative record and additional evidence presented by the parties, base its decision on the preponderance of the evidence, and grant appropriate relief." See Scruggs v. Campbell, 630 F.2d 237, 238 (4th Cir. 1980). Performing its functions under Title 20 U.S.C. § 1415(e)(2) the court makes its findings of fact:

(1) Andelena is currently in a "resource program" at Woolwine Elementary. A resource program is a program in which a student receives special educational instruction for thirty minutes or more but less than three hours per day. She is, however, as the parties agreed, in need of a "self-contained" program.

(2) From Mr. Watson's testimony at two of the administrative hearings, it is found that maximization of Andelena's educational capabilities would occur if she were in a "self-contained" class at Woolwine Elementary.

(3) At the time of the first administrative hearing on July 2, 1979, only six elementary students in Patrick County were identified as in need of a "self-contained" program. However, as of October 20, 1980, eleven such students had been identified.

(4) The only self-contained program in Patrick County is at the Stuart School. The county's decision to place a self-contained class at Stuart Elementary was based on its central location and budgetary constraints.

(5) It is approximately six miles further from Andelena's home to Stuart than it is to Woolwine, but it takes approximately thirty minutes more by bus due to the necessity of transfers.

(6) Andelena's educational and emotional needs could reasonably be met at Stuart Elementary if she were encouraged in the transition by her mother and her psychologist, Dr. Watson.

2. For a summary of the administrative procedures established under the Act, see Stemple v. Board of Education of Prince George's County, 623 F.2d 893 (4th Cir. 1980); Note, Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975, 92 Harv.L.Rev. 1103 (1979).

## B. REQUIREMENTS OF THE ACT: A FREE APPROPRIATE PUBLIC EDUCATION

The Education for All Handicapped Children Act of 1975, Title 20 U.S.C. § 1401 *et seq.*, obligates the state and local educational agencies, as a condition of receiving federal grants under the Act, to develop and submit to the United States Commission of Education, a policy and procedure that will insure handicapped students a "free appropriate public education." [3] Title 20 U.S.C. § 1412(1). As defined, a "free appropriate public education" includes, in relevant part, free special education [4] and related services,[5] "provided in conformity with the individualized education program required by the Act." Title 20 U.S.C. § 1401(18); Title 45 C.F.R. § 121a.4.

The individualized education program is a "written statement for each handicapped child" developed at a meeting among the child's parents, teacher, and a qualified school representative. Title 20 U.S.C. § 1401(19).[6] The statement must describe

**3.** "The Education for All Handicapped Children Act of 1975, 89 Stat. 773 (1975), was sparked by an '[i]ncreased awareness of the educational needs of handicapped children and landmark court decisions establishing the right to education for handicapped children . . . .' S.Rep.No. 168, 94th Cong., 1st Sess. 5, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 1425, 1429. The Congress found that handicapped children were receiving inadequate services, were not being properly identified and evaluated, and were being subjected to unnecessary exclusion from the regular educational environment. To remedy this situation, Congress increased educational grants to participating states to enable them to meet the unique needs of handicapped children, *see id.* at 7–9, [1975] U.S.Code Cong. & Admin.News at 1431–33, strengthened procedures to enable parents of handicapped children to advocate more forcefully the rights of their handicapped children, *see id.* at 9, [1975] U.S.Code Cong. & Admin.News at 1433, adopted judicially imposed due process requirements that ensure the proper identification and evaluation of handicapped children, *see id.* at 26–30, [1975] U.S.Code Cong. & Admin.News at 1450–52, and stipulated that handicapped children were to be integrated into the regular classrooms to the maximum extent appropriate. *See id.* at 33–34, [1975] U.S.Code Cong. & Admin.News at 1457–58; S.Conf.Rep.No.455, 94th Cong., 1st Sess. 30, *reprinted in* [1975] U.S. Code Cong. & Admin.News, pp. 1480, 1483. In reference to the last objective, the Report stated:

The Conferees point out that while instruction may take place in such locations as classrooms, the child's home, or hospitals and institutions the delivery of such instruction must take place in a manner consistent with the requirements of law which provide that to the maximum extent appropriate handicapped children must be educated with children who are not handicapped, and that handicapped children should be placed in special classes, separate schooling, or any other educational environment only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and supportive services cannot be achieved satisfactorily."
*Tatro v. State of Texas*, 625 F.2d 557, 560–61 (5th Cir. 1980).

**4.** A "special education" is defined by Title 20 U.S.C. § 1401(16) as follows:

The term "special education" means specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions.
*See also,* Title 45 C.F.R. § 121a.14.

**5.** Related services are defined by Title 20 U.S.C. § 1401(17) as follows:

The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.
*See also,* Title 45 C.F.R. § 121a.13.

**6.** Title 20 U.S.C. § 1401(19) provides in its entirety:

The term "individualized education program" means a written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of

the child's present level of performance, the objectives of the special education program, the specific services which will make up that program, and "appropriate objective criteria" for determining whether program objectives are being achieved. Title 20 U.S.C. § 1401(19). The Act and regulations set forth no specific guidelines defining the program's substantive content. However, in formulating the program the Act directs that "to the maximum extent appropriate" a handicapped child is to be educated together with non-handicapped children. Title 20 U.S.C. § 1412(5)(B); Title 20 U.S.C. § 1414(a)(1)(c)(iv). The regulations provide that "to meet the needs of handicapped children," the state is to provide "a continuum of alternative placements," Title 45 C.F.R. § 121a.551(a), from the least restrictive environment, instruction in regular classes, to more restrictive environments, special classes, special schools, home instruction, and instruction in hospitals and institutions. Title 45 C.F.R. § 121a.551(b)(1). A placement is to be made to the "least restrictive environment" given the child's unique educational needs and the placement's *potential harmful effect." See* Title 45 C.F.R. § 121a.552(d) (emphasis added).

Of particular significance to the present case are the regulatory directives that a placement be "as close as possible to the child's home" and unless the "child's individualized education program requires some other arrangement," that the placement be made "in the school [the child] would attend if not handicapped." 45 C.F.R. 121a.551(c). The official comment to these regulatory directives provides in relevant part as follows:

> ... [A]mong the factors to be considered in placing a child is a need to place the child as close to home as possible. Recipients are required to take this fact into account in making placement

decisions. The parents' right to challenge the placement of their child extends not only to the placement in special classes or separate schools, but also to placement in a distant school, particularly in a residential program. An equally appropriate education program may exist closer to home; and this issue may be raised by the parents under the due process provisions of this subpart.

Mrs. Pinkerton maintains that in order to provide Andelena with an "appropriate" education she must be placed in a "self-contained" program at Woolwine. That is, she asserts that the Patrick County School Board must create such a program at Woolwine. She contends that this is required irrespective of the School Board's budgetary constraints, first, because the placement is necessary to maximize Andelena's educational capabilities, one of the Act's goals, and, second, because the Act as implemented dictates placement in the school Andelena would attend but for her learning disabilities. The court rejects both contentions.

Without question Congress placed at a premium the laudable goal of maximizing the handicapped child's educational capabilities. As to how that is best accomplished given the educational needs of all the handicapped children the state is charged with educating is open to debate, a debate traditionally left to the respective states. While the All Handicapped Children Act intrudes somewhat into the state's traditional decision-making role in the education of the handicapped, it was not intended to totally supplant the state's prerogative in allocating its financial resources. It hardly needs to be stated that educational funding is not unlimited. It follows, therefore, that competing interests must be balanced to reach a reasonable accommodation. On the one hand are the undeniably important personal needs of the individual handicapped child, on the other, the realities

annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for

initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

of limited funding and the necessity of assisting in the education of all handicapped children. These competing interests must be considered. Indeed, failure to consider them would ultimately work to circumvent congressional intention to educate *all* handicapped children as best as practicable. Excessive expenditures made to meet the needs of one handicapped child ultimately reduce the amount that can be spent to meet the needs of the other handicapped children.[7] That there must be a reasonable accommodation has been recognized:

> At the center of many complaints will be a conflict over the nature and quality of services to which a handicapped child is entitled. Parents will assert that the law requires certain services to be provided. The school representatives—aware of the constraints of their own budget—will contend that "appropriate" means something less.

> The language of the Act provides no clear guidelines for resolving such a conflict. Judges and hearing officers must develop standards for evaluating the facts of individual cases. It seems possible to suggest a few general propositions that might lend direction to their inquiry. To begin with, it seems clear that "appropriate" cannot mean the best possible education that a school could provide if given access to unlimited funds. At the same time, it undoubtedly means more than simply opening the doors of the regular classroom to those capable of entering and learning without special assist-

ance. The Act surely contemplates a standard of appropriateness somewhere between these two extremes.

Note, Enforcing the Right to An "Appropriate" Education: The Education for All Handicapped Children Act of 1975, 92 Harv. L.Rev. 1103, 1125 (1979). That Congress intended for states to balance the competing interest of economic necessity on the one hand and the special needs of a handicapped child on the other is also evidenced by the fact that the Act requires the state to establish "priorities for providing a free appropriate education to all handicapped children." Title 20 U.S.C. § 1412(3). *See also*, Title 45 C.F.R. § 121a.320 *et seq.* If Congress had intended the states to grant handicapped children the best possible education they could receive as though the states had access to unlimited funds, then there would have been no need to establish priorities. In the present case, the court finds that the School Board reached a reasonable accommodation by providing a "self-contained" program at the Stuart School. The court reaches that conclusion because of the school's central location, the small number of identified students in Patrick County in need of a "self-contained" program, and the fact that it is only an additional six miles to Stuart Elementary from Andelena's home than to Woolwine Elementary.

As to Mrs. Pinkerton's contention that Andelena must be placed in the school she would attend but for her learning dis-

7. States are not reimbursed on a dollar for dollar basis for their expenditures in educating handicapped children. Rather, they receive a fixed dollar figure for each handicapped student irrespective of the student's needs. The manner of calculation and the problems it creates were recently noted:

> Funds available from the federal government are not intended to cover the entire cost of educating the handicapped. The amount received by states is determined by multiplying the number of handicapped students identified and served by a fixed dollar figure—determined each year by calculating a certain percentage of the average per pupil expenditure in the nation. 20 U.S.C. § 1411(a)(I) (1976). Most of this money is then distributed to localities solely on the basis of the

> number of children they serve, with no regard for the nature of the handicaps involved. *Id.* § 1411(d) (1976). Localities therefore have an incentive to identify handicapped children but not to place them in expensive programs. A school system may receive no more federal money for a child placed in a $20,000 per year full-time residential program than it does for a child who requires $200 worth of special reading instruction in the regular public school. A federal funding scheme responsive to the level of special services a local system provides would remove some of the financial pressure that now influences placement decisions.

Note, 92 Harv.L.Rev. 1103, 1109–1110, n. 43 (1979).

**114**

ability, the court finds no support for that position either in the statute or its implementing regulations. As previously pointed out, the regulations do direct that a placement be "as close as possible to the child's home" and *unless* the "child's individualized education program requires some other arrangement" that placement must be made "in the school [the child] would attend if not handicapped." Title 45 C.F.R. § 121a.-551(c). In the present case, Andelena's individualized education program calls for another arrangement, and as this court has found, that arrangement is reasonable. Accordingly, Mrs. Pinkerton's request that this court compel Patrick County to establish a "self-contained" learning disabilities program at the Woolwine Elementary School is denied.

### III. PLAINTIFF'S REHABILITATION ACT CLAIM

 The court finds no claim to have been established under § 504 of the Rehabilitation Act of 1973, as amended, Title 29 U.S.C. § 794. That section provides, in pertinent part, the following:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance ...."

Assuming that Andelena is a "handicapped individual" under the Rehabilitation Act, *see* Title 29 U.S.C. § 706(7), the School Board's decision not to establish a "self-contained" program at Woolwine Elementary was reasonably based. This is tantamount to saying that it was "substantially justified" and when such decisions are "substantially justified" they are lawful under § 504 of the Rehabilitation Act. *See generally, Kampmeier v. Nyquist*, 553 F.2d 296, 299 (2d Cir. 1977). Moreover, the Supreme Court has stated:

Section 504 by its terms does not compel educational institutions ... to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an "otherwise qualified handicapped individual" not be excluded from participation in a federally funded program "solely by reason of his handicap," indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context. *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 98 (1979). For the court to compel the School Board to place a "self-contained" educational program at the Woolwine Elementary School would be to require "substantial modifications." Such a directive is, therefore, not necessitated by § 504.

### IV. PLAINTIFF'S 1983 CLAIM

 While the decisions of public school officials affecting the educational services provided handicapped children are in certain instances redressable under Title 42 U.S.C. § 1983, *Crawford v. University of N. C.*, 440 F.Supp. 1047, 1053 (M.D.N.C. 1977), when it is not maintained that the handicapped child has been singled out for treatment or has been treated differently than the non-handicapped child but rather is in need of additional educational services, the Fourteenth Amendment will rarely be implicated. Absent a Fourteenth Amendment violation or a federal statutory violation,[8] a violation of the All Handicapped Children Act or the Rehabilitation Act, no claim for the handicapped child exists under § 1983. Clearly, no Fourteenth Amendment claim has been established in the present case. There being no constitutional or federal statutory violation plaintiff's 1983 claim is without merit.

### V. CONCLUSION

 Although the court is denying Mrs. Pinkerton's request that it compel Patrick

---

**8.** In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) the Supreme Court "held that 1983's laws language encompasses *all* statutory violations of federal law ...." *See* Nahmod, *Civil Rights and Civil Liberties Litigation*, § 2.10 (Supp.1980).

County to establish a "self-contained" learning disabilities program at the Woolwine Elementary School, the court finds it appropriate to require the School Board to pay for alternative transportation in the event that Mrs. Pinkerton elects to accept placement of her child in the "self-contained" program at Stuart Elementary. As stated by the court in its findings of fact, it takes Andelena approximately thirty minutes or more by bus to travel to Stuart Elementary than to Woolwine Elementary due to the necessity of transfers. Given Andelena's special situation, the court finds it appropriate to afford her the opportunity to obtain other transportation. As previously discussed, the court is empowered by Title 20 U.S.C. § 1415(e)(2) to grant "appropriate relief" in implementing its decisions under the All Handicapped Children Act. Pursuant to the Act, the right to receive an appropriate free public education includes the right to "related services." "Related services," as defined by the Act, encompass transportation services. See Title 20 U.S.C § 1401(17).[9] Va.Code Ann. § 22.1–221 also permits reimbursement for reasonable transportation costs.[10] In accordance with those provisions, the School Board is, hereby, ordered to pay for alternative transportation in the event that Mrs. Pinkerton elects to accept placement of her child in the "self-contained" program at Stuart Elementary. Otherwise, summary judgment is entered for defendants on all claims.

---

9. See n. 5, supra.

10. In its entirety Va.Code Ann. § 22.1–221 reads as follows:

> Each handicapped child enrolled in and attending a special education program provided by the school division pursuant to any of the provisions of § 22.1–216 or § 22.1–218 shall be entitled to transportation to and from such school or class at no cost if such transportation is necessary to enable such child to obtain the benefit of educational programs and opportunities. A school board may, in lieu of providing transportation, allot funds to pay the reasonable cost of transportation. The Board of Education shall reimburse the school board sixty per centum of such cost if funds therefor are available.