385 S.E.2d 637

**BOARD OF EDUCATION OF
the COUNTY OF LEWIS**

v.

**WEST VIRGINIA HUMAN RIGHTS
COMMISSION, Paul E. Devericks, Sr.,
Paul E. Devericks, Jr., and Barbara
Devericks.**

No. 18380.

Supreme Court of Appeals of
West Virginia.

June 9, 1989.

Dissenting Opinion June 28, 1989.

Charles G. Brown, Atty. Gen., Sharon M. Mullens, Sr. Asst. Atty. Gen., Charleston, for Human Rights Comn, Paul E. Devericks, Sr., et al.

Stephen A. Weber, Kay, Casto, and Chaney, Charleston, for BOE of Lewis County.

McHUGH, Justice:

This case is before the Court upon appeal pursuant to *W.Va.Code*, 29A–6–1 [1964], part of the State Administrative Procedures Act. It arises from a final order of the Circuit Court of Lewis County, which reversed the findings of the West Virginia Human Rights Commission (hereinafter "the Commission"). The Commission had determined that the appellee was guilty of an unlawful discriminatory practice under the West Virginia Human Rights Act, specifically, *W.Va.Code*, 5–11–9(f) [1981].

The appellants are the West Virginia Human Rights Commission, Paul E. Devericks, Sr., Paul E. Devericks, Jr. and Barbara Devericks.

The appellee is the Lewis County Board of Education (hereinafter "the Board").

This Court has reviewed the petition for appeal, all matters of record, and briefs of the parties.[1] For the reasons set forth herein, we are of the opinion that the final order of the Circuit Court of Lewis County should be affirmed, in part, and reversed, in part.

I

Based upon findings made by the Commission, the facts in this case are as follows:

In November, 1977, Paul Devericks, Sr. enrolled his five children in the public schools of Lewis County. Two of his children, Paul Jr. and Barbara, were hearing-impaired. They were enrolled at Weston Central Elementary School. Paul, Jr., age 12 at the time, is profoundly deaf, and communicates only by "homemade" gestures without syntax. Barbara, age 10 at the time, is able to communicate orally. There were no other hearing-impaired children in the Lewis County school system, and it did not have an adequate program for deaf and hearing-impaired children. Paul, Jr. and Barbara were taught in a separate class for two hours a day by a speech therapist, until they could be enrolled in the Romney School for the Deaf and Blind. When they were not being privately taught by the speech therapist, they were placed in a regular classroom.

1. This Court has also reviewed the *amicus curiae* brief filed by the West Virginia Advocates urging reversal of the circuit court's final order.

During the summer of 1978, Paul, Jr. was committed to Weston State Hospital. Paul, Jr. and Barbara enrolled in the Romney School for the Deaf and Blind in August, 1978. In September, 1978, Paul, Jr. was expelled from Romney due to behavioral problems.

The Devericks family moved to Upshur County in April, 1979, where Paul, Jr. became embroiled with legal authorities. Paul, Jr. was referred by the circuit court, utilizing juvenile jurisdiction, to the Brown School, an institution in Austin, Texas, that was capable of dealing with handicapped children who have behavioral problems. Barbara was placed in another school in Texas. Paul, Jr. was withdrawn from the Brown School because his father objected to the method of treatment utilized for him.

The Devericks returned to Lewis County in March, 1981, and the two children were again enrolled in Lewis County schools. At this point, Paul, Jr. was 16 years old and Barbara was 14 years old. It was apparent to school personnel that the two children had problems other than only their hearing impairments. In addition to Paul, Jr.'s behavioral problems, both Paul, Jr. and Barbara were at a first or second grade level in academic terms. Moreover, neither child could use or understand the "American sign," which is the standard sign language for the deaf that is generally accepted in the United States. As a result of this, their communication abilities were severely limited.

Although counseling and language therapy were provided for the two children for a half-day, two to three days per week, it became apparent that the Lewis County schools did not have the resources to provide an appropriate education for the Devericks children. The Board determined that a deaf educator was not the children's primary need. Rather, it determined that they needed placement in an institution to compensate for their deficiencies in sign language as well as development. Consequently, the Board sought to place Paul, Jr. and Barbara in such an institutional setting for the 1981–82 school year. Their father, however, refused to give permission to such a placement.

In November, 1981, Paul Devericks, Sr. filed a complaint with the West Virginia Human Rights Commission, against the Board, alleging discrimination on the basis of handicap, and asserting that his children had been deprived of an appropriate education.

Pending a decision for permanent placement, Paul, Jr. and Barbara were placed in the "Alternative Learning Center," which was a program for students who are not successful in a traditional classroom environment. This program included individual tutoring, but it also "mainstreamed" the children with other students for group activities, such as physical education.

Paul, Jr. began having behavioral problems in the Alternative Learning Center. On one occasion, he threw a chair at another student and broke a window. He was removed from the Alternative Learning Center due to safety concerns for other children. A teacher was provided to educate Paul, Jr. at home. Attendance problems arose with both Paul, Jr. and Barbara, eventually becoming a total cessation of attending school. However, no formal withdrawal from school was made. From April, 1982, to September, 1985, no educational services were provided for the Devericks children by the Board.

In the fall of 1985, as part of a negotiated agreement, Paul, Jr. and Barbara were enrolled again in the Lewis County schools. An "individualized educational plan" was developed for the two children, including the services of a deaf educator. Both children were making progress at the time of the hearing before the Commission.

The Commission adopted the hearing examiner's recommended decision that the Board violated the West Virginia Human Rights Act. The Commission determined that by failing to provide the Devericks children with an appropriate education as determined by procedures which adequately considered the least restrictive environment, the Board engaged in discrimination.

The hearing examiner concluded that no monetary damages should be awarded in

this case. The Commission, however, ordered that Paul, Sr., Paul, Jr., and Barbara Devericks were entitled to incidental damages in the amount of $5,000 each, and ordered that the children be provided an appropriate compensatory education until they reach the age of 24. The compensatory education is to be provided pursuant to individual education plans prepared each year, which insure placement in accordance with least restrictive environment provisions of state and federal regulations.

The Board filed a petition for an administrative appeal in the Circuit Court of Lewis County, pursuant to *W.Va.Code*, 29A–5–4(b) [1964]. The circuit court reversed and vacated the Commission's order.

## II

The basic issue in this case is whether the educational program offered the Devericks children by the Board discriminated against them on the basis of their handicap.

■ At the outset, we note that this case, as it pertains to Paul Devericks, Jr., is moot, because he has reached the age of 24. Obviously, the remedy of a compensatory education is no longer available to him. Therefore, we need not decide the merits of his claim.

With regard to Barbara Devericks, however, we must address the issue of whether the circuit court erred in reversing the Commission's decision that the Board engaged in discrimination and denied her an appropriate education.

*W.Va.Code*, 29A–5–4(g) [1964] provides that a circuit court may reverse the order or decision of an administrative agency if that agency's findings are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See* syl. pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983). *See also Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986); syl. pt. 3, *Montgomery General Hospital v. West Virginia Human Rights Commission*, 176 W.Va. 580, 346 S.E.2d 557 (1986); syl. pt. 3, *State ex rel. State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.*, 174 W.Va. 711, 329 S.E.2d 77 (1985).

In this case, the hearing examiner found that the Board had no appropriate educational program for deaf and hearing-impaired students and the Commission adopted this finding. The circuit court, in reviewing the Commission's decision, acknowledged this fact.

In syllabus point 1 of *West Virginia Human Rights Commission v. United Transportation Union, Local 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981), this Court held that "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." *See also* syl. pt. 1, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986).

■ The circuit court in this case viewed the Commission's ultimate finding of discrimination as not supported by substantial evidence. The circuit court's order stated that the Commission's findings were "clearly wrong." The circuit court acknowledged that the Board had no appropriate educational programs for deaf and hearing-impaired students. The circuit court believed, however, that because there were no other hearing-impaired students in Lewis County at the time the Devericks children were enrolled, it would have been "unreasonable" to set up an educational

program for such students.[2] The circuit court also found that "the Lewis County Board of Education and the professional educators under their employ made substantial good faith efforts to provide the Devericks children with as good an education as was available and that their actions and/or inactions were not discriminatory." Our review of the record indicates, however, that the Commission's finding of discrimination is supported by substantial evidence on the whole record. It is clear that the circuit court merely weighed the evidence differently than did the Commission. That is not its role in reviewing the record.

█ A county board of education is a "person" pursuant to *W.Va.Code*, 5–11–3(a), as amended, and a "place of public accommodations" pursuant to *W.Va.Code*, 5–11–3(j), as amended, and, therefore, may not discriminate against the handicapped in violation of *W.Va.Code*, 5–11–9(f), as amended. The appellant Barbara Devericks is handicapped as defined by *W.Va. Code*, 5–11–3(t) [1981, 1987], due to her hearing impairment.[3] *See also* 6 *W.Va. Code of State Rules* §§ 77–1–1 to –7 (1982). Therefore, the question with regard to this issue is whether discrimination, in violation of *W.Va.Code*, 5–11–9(f) [1981], existed in this case.

The Board offered an educational plan which included placing the Devericks children in an institutional setting outside of Lewis County. Their father, however, objected to this, and expressed his desire to keep the children at home and trained in Lewis County.

Our review of the record in this case reveals that the Commission's decision merely ordered the Board to follow its duty as prescribed by *W.Va.Code*, 18–20–1 [1983].

*W.Va.Code*, 18–20–1 [1983] provides, in pertinent part:

In accordance with the following provisions, county boards of education throughout the State shall establish and maintain for all exceptional children between five and twenty-three years of age special educational programs, including, but not limited to, special schools, classes, regular classroom programs, home-teaching or visiting-teacher services for any type or classification as the state board of education shall approve. Provisions shall be made for educating exceptional children (including the handicapped and the gifted) who differ from the average or normal in physical, mental or emotional characteristics, or in communicative or intellectual deviation characteristics, or in both communicative and intellectual deviation characteristics, to the extent that they cannot be educated safely or profitably in the regular classes of the public schools or to the extent that they need special educational provisions within the regular classroom in order to educate them in accordance with their capacities, limitations and needs. In addition, county boards of education may establish and maintain other educational services for exceptional children as the state superintendent of schools may approve.

This statute imposes upon the Board a duty to establish and maintain an educational program that provides handicap children with an appropriate education.[4] The Commission utilized this statutory provision as well as the Federal Education of the Handicapped Act (EHA) to determine whether the education offered to the Devericks children satisfied the requirements pertaining to the education of handicapped students.

The Federal EHA is codified in 20 *U.S.C.* §§ 1400 to 1461, as amended. It promotes the education of handicapped children in a "least restrictive environment" by requiring states to establish

---

**2.** Although this determination, in isolation, may have merit, it is not pivotal *per se.*

**3.** This statutory provision is discussed *infra.*

**4.** *W.Va.Code*, 18–20–5 [1988] places on the state superintendent of schools the responsibility of assisting the county boards of education in establishing educational programs for exceptional children. The implementing regulations for *W.Va.Code*, 18–20–1 to 18–20–8, as amended, are set forth in 9 *W.Va.Code of State Rules* §§ 126–16–1 to –2 (1986).

procedures to assure that, to the maximum extent appropriate, handicapped children, including children in public or private institutions or other care facilities, are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily[.]

20 *U.S.C.* § 1412(5)(B) (1982). *See also* 34 *C.F.R.* §§ 300.550 to 300.556 (1988).

The EHA also requires states to establish

procedures to assure that testing and evaluation materials and procedures utilized for the purposes of evaluation and placement of handicapped children will be selected and administered so as not to be racially or culturally discriminatory. Such materials or procedures shall be provided and *administered in the child's* native language or *mode of communication,* unless it clearly is not feasible to do so, and no single procedure shall be the sole criterion for determining an appropriate educational program for a child.

20 *U.S.C.* § 1412(5)(C) (1982) (emphasis supplied). The EHA also provides parents of handicapped children opportunities to be involved with the initial individualized education plan as well as changes that the local school agency desires to make. 20 *U.S.C.* § 1415 (1982 and Supp. IV 1986).

The Commission concluded that the EHA is relevant to this case. Although the EHA expressly applies to children between the ages of three and twenty-one, the implementing state regulations to *W.Va.Code,* 18–20–1 [1983] follow the EHA in every respect applicable to this case. *W.Va. Code,* 18–20–1 [1983] provides for the education of the handicapped up to the age of twenty-four.

It is the Board's contention that a residential placement would be the better alternative for the Devericks children. The United States Supreme Court has held that, for purposes of the EHA, a "free appropriate public education" is achieved "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Board of Education v. Rowley,* 458 U.S. 176, 203, 102 S.Ct. 3034, 3049, 73 L.Ed.2d 690, 710 (1982). Based upon that ruling of the United States Supreme Court, we believe the Commission properly extended the logic of *Rowley* to the applicable state statute and regulations. Consequently, the Board's attempts in this case did not constitute the provision of a "free appropriate public education" to the Devericks children pursuant to the implementing regulations of *W.Va.Code,* 18–20–1 [1983].

Although the implementing regulations for *W.Va.Code,* 18–20–1 [1983] and federal law permit out-of-state and residential placements, they also require that the "least restrictive environment" plan be pursued to the maximum extent appropriate. *See, e.g., Roncker ex rel. Roncker v. Walter,* 700 F.2d 1058 (6th Cir.1983). The Commission concluded that the Board failed to consider the "least restrictive environment" placement provisions for the Devericks children, by offering to send them out of Lewis County to receive appropriate educational training and offering counseling and language therapy for a half-day, two to three days per week.

Furthermore, the Commission concluded that the procedural rights of the Devericks were not adequately protected, and that although Paul Devericks, Sr. may not have been cooperative, his lack of cooperation dealt with the Board's plan to send his children to schools outside of Lewis County.[5]

Thus, the Commission concluded that the Board did not provide an appropriate education for the Devericks children pursuant to its duty to do so under *W.Va.Code,* 18–

---

**5.** Evidence in the record suggests that the children's father, Paul Devericks, Sr., may have made it difficult for the Board to deal with Paul, Jr. and Barbara's situation. His actions, however, are irrelevant to the Board's duty to provide his children with an appropriate education.

20-1 [1983].[6] The Commission's findings and conclusions were not arbitrary, capricious, abusive of discretion, or excessive of its statutory authority to carry out the policy of the West Virginia Human Rights Act, specifically, to provide Barbara Devericks with "equal access to places of public accommodations[.]" *W. Va. Code,* 5-11-2 [1981, 1989].

As we previously pointed out, Barbara Devericks is handicapped as defined by *W. Va. Code,* 5-11-3(t) [1981, 1987], due to her hearing impairment. *W. Va. Code,* 5-11-3(t) [1981, 1987] defined "handicap" to mean "any physical or mental impairment which substantially limits one or more of an individual's major life activities." [7]

Hearing-impaired children, between five and twenty-three years of age, are handicapped for purposes of *W. Va. Code,* 18-20-1, as amended. Therefore, when a county board of education fails to provide an appropriate education for a hearing-impaired child between five and twenty-three years of age, such failure constitutes unlawful discrimination based upon handicap and is violative of *W. Va. Code,* 5-11-9(f), as amended.

Accordingly, Barbara Devericks is now entitled to an appropriate education until she reaches the age of twenty-four years in accordance with *W. Va. Code,* 18-20-1 [1983] and the regulations implemented thereto, which insure placement in accordance with least restrictive environment provisions and in accordance with an individualized education program. The circuit court merely focused on the Board's ef-

forts during the spring of 1981, when it provided the Devericks children with counseling and language therapy for a half-day, two to three days per week, while attempting to place them in programs outside of Lewis County. Consequently, the circuit court concluded that the Board made good faith efforts to provide the Devericks children with an appropriate education. This focus was too narrow.

### III

We now address the question of incidental damages. The Commission ordered that Paul, Sr., Paul, Jr., and Barbara Devericks were entitled to incidental damages in the amount of $5,000 each. Testimony presented at the Commission's hearing indicated that the Devericks children suffered emotional distress as a result of their frustrated attempts to obtain an education. There was also testimony presented that Paul Devericks, Sr. suffered emotional and physical pain as a result of his children's plight.

The hearing examiner found that Paul Devericks, Sr. did not prove that he had been discriminated against in violation of the West Virginia Human Rights Act and concluded that no monetary damages would compensate the Devericks children for the loss of an education. The Commission adopted the examiner's findings and conclusions except the examiner's conclusion that monetary damages were not appropriate. The Commission awarded the incidental damages to which we have alluded. However, the Commission also

---

**6.** The Board presented evidence that it had made good faith efforts to provide the Devericks children with an appropriate education. For example, the Board's attempts to obtain an educator for the deaf as well as the suggestions of the school staff to send the children to the Romney School for the Deaf and Blind and the Brown School in Austin, Texas. While these efforts may be commendable, they do not excuse the Board from its duty pursuant to *W. Va. Code,* 18-20-1 [1983].

**7.** The 1987 amendment to *Code,* 5-11-3 is not relevant to this case.

In 1989, the legislature amended *Code,* 5-11-3(t). "Handicap" now "means a person" who:
    (1) Has a mental or physical impairment which substantially limits one or more of

such person's major life activities; the term 'major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
    (2) Has a record of such impairment; or
    (3) Is regarded as having such an impairment.
Enrolled Conference Committee Substitute for House Bill 2516, passed on April 8, 1989, signed by the governor on April 26, 1989, effective July 1, 1989; 1989 *W. Va. Acts* ch. 92. The events in this case transpired prior to the 1989 amendment and it has no bearing on the decision in this case.

adopted the examiner's finding that Paul Devericks, Sr. was not discriminated against in violation of the West Virginia Human Rights Act.

■■■ Our review of the record in this case indicates that Paul Devericks, Sr. was not a victim of discrimination who is entitled to incidental damages. Rather, his procedural rights were not adequately protected by the actions of the Board.[8] Therefore, the $5,000 incidental damages awarded to Paul Devericks, Sr. was not proper, and the circuit court did not err by reversing the Commission's order in this regard. See W.Va.Code, 5-11-10 [1971, 1987], empowering the Commission to issue remedial orders against persons found to have "engaged in ... any unlawful discriminatory practice[.]" Because the Board did not violate the Act with respect to Paul Devericks, Sr., it is inappropriate to order a remedy for him.

■ With respect to Paul, Jr. and Barbara Devericks, an award of incidental damages is appropriate. However, the $5,000 award is excessive. In Bishop Coal Co. v. Salyers, 181 W.Va. 71, 238 (1989), we held that the West Virginia Human Rights Commission is authorized to award up to $2,500 in monetary damages for anything other than lost wages. Bishop Coal Co., 181 W.Va. at 80, 380 S.E.2d at 247.

Accordingly, Paul, Jr. and Barbara Devericks are each entitled to $2,500, based upon the evidence presented at the Commission's hearing that they suffered emotional distress as a result of the Board's violation of the West Virginia Human Rights Act.

## IV

Barbara Devericks is entitled to a compensatory education until she reaches the age of 24. As previously pointed out, this case, as it pertains to Paul Devericks, Jr., is moot, because he has already reached the age of 24. Furthermore, Paul Devericks, Sr. is not entitled to incidental damages. Paul Devericks, Jr. and Barbara Devericks are each entitled to incidental damages in the amount of $2500.

Consistent with the foregoing, the final order of the Circuit Court of Lewis County is affirmed, in part, and reversed, in part.

Affirmed, in part; reversed, in part.

McGRAW, J., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

NEELY, Justice, dissenting:

This decision sets a terrible precedent. It values the irresponsible demands of parents above the clear interest of their handicapped children. It requires exorbitant expenditures by local school boards in rural counties in what will ultimately amount to utterly futile efforts to offer an approximation of the education available at good, specialized schools for handicapped children. Under the majority's view, local school boards must divert money from conducting their usual classes—a task they do well—to setting up special local schools for a few handicapped children—a task they cannot do well.

The Romney School for the Deaf and Blind is an excellent school, with long experience in meeting the special needs of its students, and a long record of service to the deaf and blind children of this State. Romney School could not handle the children who are the subject of this proceeding because of their severe emotional handicaps. But this Court expects Lewis County to do so. By what logic? Commanding Lewis County to educate these children does not make it possible for Lewis County to do so. If the world could be made a better place simply by entering an order,

---

8. If procedural due process is not afforded, monetary compensation is not the proper remedy. "The proper remedy for revers[i]ble due process procedural defects in administrative proceedings is to remand the case to the appropriate tribunal with directions to order the ad-

ministrative institution to remedy the defect." Syl. pt. 4, Clarke v. West Virginia Board of Regents, 166 W.Va. 702, 279 S.E.2d 169 (1981). In light of our decision in this case, Paul Devericks, Sr. has now been afforded procedural due process.

the Russians would have achieved utopia long ago!

The majority has enshrined an unhealthy fetish for local schooling of handicapped children. In so doing it allows an accident of geography to trump the only legitimate end of these anti-discrimination statutes: the best education for handicapped children.

The majority misconstrues the federal statute's preference for the "least restrictive environment." When a handicap is severe enough that education "cannot be achieved satisfactorily" through regular classes, then it is appropriate to remove handicapped children from regular classes. 20 U.S.C. § 1412(5)(B) (1982).

The cases break down into two basic patterns. First, the school system may seek to do slip-shod in-house training, over the parents' insistence that the system pay to send the child to a specialized boarding school. The courts tend to support the parents. *See, e.g.: David D. v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir. 1985), *cert. denied* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986); *Doe v. Anrig,* 692 F.2d 800 (1st Cir.1982) aff'd in pertinent part *sub nom. Burlington School Comm. v. Dept. of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Geis v. Bd. of Education,* 774 F.2d 575 (3d Cir.1985); *Kruelle v. New Castle Co. School Dist.,* 642 F.2d 687 (3d Cir.1981); *Christopher T. v. San Francisco Unified School Dist.,* 553 F.Supp. 1107 (N.D.Cal. 1982); *Papacoda v. State,* 528 F.Supp. 68 (D.Conn.1981); *North v. D.C. Bd. of Education,* 471 F.Supp. 136 (D.D.C.1979); *Amherst–Pelham Reg. School Comm. v. Dept. of Education,* 376 Mass. 480, 381 N.E.2d 922 (1978); *In re "A" Family,* 184 Mont. 145, 602 P.2d 157 (1979); *In re Leitner,* 40 App.Div.2d 38, 337 N.Y.S.2d 267 (1972).

The other pattern occurs frequently. As in the case before us, the school system prefers to pay the bill to send a child to boarding school, instead of setting up an expensive, inefficient in-house program for a few children. The courts often support the school system. *See, e.g., Pinkerton v. Moye,* 509 F.Supp. 107 (W.D.Va.1981); *In*

*re Petty,* 241 Iowa 506, 41 N.W.2d 672 (1950).

The bottom line of the decisions is that the best interest of the child carries the day. As Judge Turk wrote in *Pinkerton v. Moye, supra,* "Without question Congress placed at a premium the laudable goal of maximizing the handicapped child's educational capabilities." 509 F.Supp. at 112. *See generally:* Note, "Residential Placement of Handicapped Children: Altering the Scope of a Public Education," 43 U.Pitt. L.Rev. 789 (1982); Note, "Enforcing the Right to an 'Appropriate' Education," 92 Harv.L.Rev. 1103 (1979).

Certainly there is a loss when children must be removed from regular classes and their home environment. But once that point is passed, the school board must not tarry in finding the best possible education *for the child.* It should not favor its own school system for the sake of either convenience or economy, when the local schools cannot do the job.

Having a handicapped child is a grievous misfortune for parents, but it is an even greater misfortune for the child. A child who is handicapped must be taught at an early age to compensate to the maximum possible extent. Learning to read Braille, learning Standard American Sign, learning to speak without the benefit of hearing, and learning other compensatory skills at an early age is the difference between a potentially successful life and a mere vegetable existence. Parents, however, must also bear a responsibility for their children; if parents are entirely reluctant to be separated from their children so that they can be educated in good schools, it is appropriate for the state to expect the parents to move to where such good schools are located. Ours is a world of finite resources—a consideration of which courts as well as legislatures and executives should be constantly mindful.

Where a school system is located in a large population center it may be possible to provide *high quality* compensatory education at the local level. But today's decision merely requires rural school boards to go through *the motions* of providing good

education; without necessary economies of scale, it is not *possible* to duplicate in Lewis County the facilities of the Romney School or a good out-of-state school.

Because I refuse to believe that the statutes require a result so opposed to the best interests of handicapped children themselves, I must respectfully dissent.