**CARROLL K., et al., Plaintiffs,**

**v.**

**FAYETTE COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civil Action No. 5:98–0425.**

United States District Court, S.D. West Virginia, Beckley Division.

Aug. 25, 1998.

---

Scott S. Segal, The Segal Law Firm, Charleston, WV, for Plaintiffs.

J. Victor Flanagan, Pullin, Knopf, Fowler & Flanagan, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion to dismiss. The matter is ripe for review. After careful consideration, the Court **DENIES** in part and **GRANTS** in part the motion.

### I. FACTUAL BACKGROUND

Accepting all factual averments of the complaint as true, the Court states the facts.

Carroll K. was a sixth grade student at Collins Middle School during the 1996–97 school year. Before, on, and after April 7, 1997 Carroll K. was the victim of more than one crime of violence committed at the school, all of which were motivated by her gender. On one occasion, police officers were summoned when a student physically assaulted Carroll K., causing her to suffer injuries.[1]

On April 7, 1997 Carroll K. and other students were on school property, but outside the school building for lunchtime recess and recreation. When one male student threatened Carroll K. in a bully-like fashion, she attempted in vain to run away. After the male student caught her, he picked her up and put her on his shoulder. After swinging her around in the air, he threw her against a steel pole. While this was happening, Carolyn Benda, who was a teacher at Collins, witnessed its occurring and exclaimed, "Oh God. Here we go again!" but she made no attempt to intervene. As a proximate result of being thrown against the pole, Carroll K. suffered a severe cervical spine injury and now is blind in her left eye.

Carroll K. is joined by her parents, Charles K. and Nancy K., in filing this civil action against Defendants Fayette County Board of Education ("BOE"); David Perry, Collins Middle School principal; Jim Ayers, vice-principal; and Carolyn Benda, teacher. Plaintiffs assert claims under Title IX, 20 U.S.C. §§ 1681, *et seq.;* 42 U.S.C. § 1983; West Virginia Human Rights Act, *West Virginia Code* § 5–11–1 *et seq.;* and state law.

### II. DISCUSSION

#### A. Standard for Rule 12(b)(6) Motions

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule 12(b)(6), Federal Rules of Civil Procedure:*

In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996); *Gardner v. E.I.Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996).

It is through this analytical prism the Court evaluates Defendants' motion.

#### B. Title IX Claims

Title IX provides in pertinent part that, "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

---

1. The complaint is unclear as to when this incident occurred in relation to the April 7, 1997 incident.

discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court held Title IX is enforceable through an implied private right of action and in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), it held monetary damages are available in the implied private action. The text of Title IX should be given "a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521, 102 S.Ct. 1912, 72 L.Ed.2d 299, (1982) (citation omitted).

This case involves a situation of alleged peer-to-peer harassment, a Title IX scenario with which the Supreme Court has not yet been presented. Although our Court of Appeals has addressed peer harassment under Title IX, that opinion has been vacated pending a rehearing *en banc. See Brzonkala v. Virginia Polytechnic Inst.*, 132 F.3d 949 (4th Cir.1997), *rehearing en banc granted, opinion vacated* (Feb. 5, 1998). Nonetheless, numerous courts have addressed questions similar to the ones raised here, and the Court has considered their opinions.[2]

Defendants raise several arguments for dismissal, some of which are mentioned merely and not developed. Given a broad reading, the documents argue plaintiffs failed to allege facts that (1) the alleged harassment occurred because of Carroll K.'s gender; (2) the Defendants had actual notice of the alleged harassment; and (3) the BOE had the discriminatory intent to violate Title IX.

First, Plaintiffs have alleged that, on several occasions "Carroll K. was the victim of crimes of violence *motivated by gender* at Collins Middle School." Complaint at 3 (emphasis added). Because the Court must accept as true all factual averments in the complaint, the complaint survives Defendants' first challenge.

■ Second, Defendants argue Plaintiffs have not stated facts sufficient to show Defendants had actual notice. The Supreme Court recently held, "in cases . . . that do not involve official policy of the recipient entity, . . . a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, —— U.S. ——, ——, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998) (emphasis added). Plaintiffs allege a teacher witnessed the playground event, aware of the male student's actions.[3] Moreover, the complaint alleges Defendants "otherwise had knowledge of inappropriate behavior and a hostile sexual environment and took no action to remedy the situation or to intervene in any way." Complaint at 7. The Court cannot conclude there is no set of facts Plaintiffs could prove that would support their claim and entitle them to relief.

■ Third, Defendants argue Plaintiffs have failed to allege facts showing the BOE had a discriminatory intent. Once an official has actual notice, he must "fail[ ] adequately to respond" which "must amount to deliber-

2. Whether a Title IX cause of action exists for peer-to-peer sexual harassment *is a difficult* question. The Court is aware Courts of Appeal have reached differing results. *See, e.g., Davis v. Monroe County Board of Education*, 120 F.3d 1390 (11th Cir.) (*en banc*), *petition for cert. filed*, 66 U.S.L.W. 3387 (U.S. Nov. 19, 1997) (No. 97–843); *Doe v. University of Illinois*, 138 F.3d 653 (7th Cir.1998). *See* Emmalena K. Quesada, Note, *Innocent Kiss or Potential Legal Nightmare: Peer Sexual Harassment and the Standard of School Liability under Title IX*, 83 Cornell L.Rev. 1014 (1998). Defendants appear to concede such a cause of action exists in this Circuit. Moreover, without contrary guidance from the

Court of Appeals, the Court allows the claim survives a motion to dismiss.

3. The complaint describes Defendant Carolyn Benda as "a teacher standing in loco parentis vested with supervisory authority over the school children." Complaint at 3. Such an allegation is sufficient to survive a motion to dismiss. The Court notes that, on a motion to dismiss, there are insufficient facts and evidence from which to determine whether the teacher had "authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf," as required by *Gebser*. Such an argument is better addressed in summary judgment filings.

ate indifference to discrimination." *Gebser*, 118 S.Ct. at 1999. There must be "in other words . . . an official decision by the [federal funds] recipient not to remedy the violation." *Id.* Allegedly, Benda witnessed the male student picking up Carroll K., said, "Oh, God. Here we go again," and took no action to intervene. Moreover, the complaint alleges Defendants, *inter alia,*:

> [d]iscouraged and inhibited the reporting by female students of gender motivated abuse, hostility, intimidation, discrimination, and harassment;
>
> . . .
>
> [f]ailed to prevent retaliation against students reporting or complaining of mistreatment, failed to ensure a non-hostile post-disclosure educational environment for students complaining of gender motivated abuse, harassment, hostility, intimidation, discrimination, and disparate treatment, and otherwise *knowingly failed to take appropriate remedial action in response to the hostile sexual environment;*
>
> [d]ismissed, discounted, and excused the gender motivated harassment, abuse, assault, battery, disparate treatment, hostility, intimidation, discrimination and similar misconduct by the attitude of "boys will be boys."
>
> . . .
>
> [o]therwise . . . took no action to remedy the situation or intervene in any way.

Complaint at 6–7. Although reported cases state more fully developed factual scenarios, including specific factual allegations of officials' failure to respond, *see, e.g., Doe v. Londonderry Sch. Dist.,* 970 F.Supp. 64 (D.N.H.1997), the complaint here sufficiently alleges facts of an official failing to respond adequately.

Although the Court finds the Title IX claim survives the motion to dismiss, it is appropriate to echo another court in cautionary words to Plaintiffs:

> While we are permitting plaintiff's complaint to go forward, we caution that not every unwanted interaction of a physical or

sexual nature between adolescents states a Title IX claim against a school district. While sexual overtures or contact between a teacher and a student is undeniably out of bounds, a similar relationship between adolescents does not necessarily constitute harassment.

*Collier v. William Penn Sch. Dist.,* 956 F.Supp. 1209, 1214 (E.D.Pa.1997).

### C. 42 U.S.C. § 1983

Plaintiffs allege Defendants violated Carroll K.'s Fourteenth Amendment due process right to be free from state-occasioned harm to her bodily integrity, right to privacy, right to freedom and protection from and against a hostile discriminatory environment, and right to be free from gender-motivated abuse and harassment.[4] Defendants argue, first, Plaintiffs cannot maintain causes of action under both Title IX and § 1983 for the same set of underlying facts and, second, Defendants' actions do not constitute a § 1983 violation.

#### 1. Preemption

■ Section 1983 serves as a means by which plaintiffs may recover monetary damages and injunctive relief from governmental actors and entities whose actions under color of state or local law deprive such plaintiffs of constitutional rights, privileges and immunities. Importantly, Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citations omitted).

Defendants argue Plaintiffs cannot maintain both a Title IX cause of action and a § 1983 cause of action because the Title IX statute is " 'sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983.' " *Does v. Covington County Sch. Bd. of Educ.,* 930 F.Supp. 554, 573 (M.D.Ala.1996) (citing *Lakoski v. James,* 66 F.3d 751, 754 (5th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 357, 136 L.Ed.2d 249 (1996)). Indeed, Defendants correctly argue that some courts have held a

---

**4.** Plaintiffs also allege Defendants violated Carroll K.'s rights under the Fourteenth Amendment's Equal Protection Clause. Defendants do not challenge the complaint on that ground, however.

lawsuit under Title IX preempts filing suit under § 1983 for the same set of facts. *See, e.g., Does,* 930 F.Supp. at 573; *Williams v. Sch. Dist. of Bethlehem, Pa.,* 998 F.2d 168, 176 (3rd. Cir.1993), *rehearing denied, cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994). The argument grows from the Supreme Court's opinion in *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), which stated, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy under § 1983." *Id.* at 20, 101 S.Ct. 2615.

 After careful review of the case law, and without guidance from the Fourth Circuit, the Court holds Title IX does not preempt suit under § 1983 when the underlying set of facts not only violates Title IX but also violates independent constitutional rights, as alleged here. As the Tenth Circuit noted:

> [t]he *National Sea Clammers* doctrine "speaks only to whether federal statutory rights can be enforced both through the statute itself and through section 1983"; it does not "stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim."

*Seamons v. Snow,* 84 F.3d 1226, 1233 (10th Cir.1996) (quoting *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 723 (6th Cir.1996)). In so holding, the Court joins the District Court for the Western District of Virginia. *See Alston v. Virginia High Sch. League, Inc.,* 176 F.R.D. 220, 223 (W.D.Va.1997) (Michael, J.).

### 2. Due Process

Defendants also argue the § 1983 suit should be dismissed because Defendants had no affirmative duty to prevent harm by private actors to Carroll K., citing *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("nothing in the language of the Due Process Clause itself require the State to protect the life, liberty and property of its citizens against invasion by private actors."). Our Court of Appeals has stated, "the Due Process Clause works only as a negative prohibition on state action." *Pinder v. Johnson,* 54 F.3d 1169, 1174 (4th Cir.) (*en banc*) (citing *DeShaney,* 489 U.S. at 196, 109 S.Ct. 998 ("Its purpose was to protect the people from the State, not to ensure that the State protected them from each other."), *cert. denied,* 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995)).

Plaintiffs respond that Defendants "aided, fostered, and encouraged the dangerous environment by their actions and deliberate inaction," Pls.' Resp. at 15, and that Defendants had a special relationship with Carroll K. because, due to compulsory attendance laws, she was limited in her freedom to act on her own behalf.

 Defendants cannot be liable simply because of the compulsory attendance laws. *DeShaney* made clear that a state is not liable for actions by private actors unless the state has taken decisive action to limit severely the victim's freedom and ability to act on his own behalf. *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. 998 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

A review of the case law reveals that many courts have held a school is not liable for injuries caused by one student to another. *See, e.g., Graham v. Indep. Sch. Dist. No. I–89,* 22 F.3d 991 (10th Cir.1994); *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729 (8th Cir. 1993); *Maldonado v. Josey,* 975 F.2d 727 (10th Cir.1992), *cert. denied,* 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1373 (3d Cir.1992) (*en banc*) (holding that "no special relationship based upon a restraint of liberty exists" in the context of public school attendance), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 272 (7th Cir.1990) ("We do not suggest that prisoners and [involuntarily committed] mental patients are an exhaustive list of all persons to

whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises.").

Because compulsory attendance laws are insufficient to create "the custodial nature of a 'special relationship,'" *Pinder*, 54 F.3d at 1174, Plaintiffs' claim fails in that regard. The Defendants are **GRANTED** partial relief on this issue.

■ Plaintiffs next argue this was a state-created danger, alleging Defendants aided and fostered the dangerous environment to Carroll K. "*DeShaney* does not specify what actions of a state would render a person more vulnerable to danger, nor how much more vulnerable to danger a state must make a person before the person's rights are violated." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir.1994). "It cannot be that the state 'commits an affirmative act' or 'creates a danger' every time it does anything that makes injury at the hands of a third party more likely." *Pinder*, 54 F.3d at 1175. Although the Fourth Circuit has not enunciated a test for such a claim, the Third Circuit has stated a restrictive formulation for it: (1) the harm caused was foreseeable and "fairly direct;" (2) the official acted in "willful disregard" of the plaintiff's safety; (3) some relationship existed between the state and the plaintiff; and (4) the official created an opportunity for the infliction of harm. *Kneipp v. Tedder*, 95 F.3d 1199, 1208–09 (3rd Cir. 1996).

■ Here, Plaintiffs allege Principal David Perry told Carroll K. that, as a female, she had no right to defend herself against attacks by male students and that she would be punished if she attempted to. Furthermore, they allege there was a longstanding hostile environment toward females so pervasive it had the force and effect of a custom within the school. Assuming these allegations to be true, which the Court must do, the Court cannot conclude there is no set of facts Plaintiffs could prove that would state a claim and entitle them to relief. Thus, Plaintiffs' claim survives the motion to dismiss insofar as it alleges Defendants created a dangerous situation.

## D. West Virginia Human Rights Act

■ The West Virginia Human Rights Act ("WVHRA"), *West Virginia Code* 5–11–1 *et seq.*, prohibits discrimination on the basis of gender in places of public accommodation. It appears clear public schools are public accommodations. *See Bd. of Educ. v. West Virginia Human Rights Comm'n*, 182 W.Va. 41, 385 S.E.2d 637 (1989). As this Court has stated previously, "The West Virginia Supreme Court of Appeals has held that the evidentiary standards under the West Virginia Human Rights Act are identical to those for Title VII of the Federal Civil Rights Act." *Thomas v. Shoney's, Inc.*, 845 F.Supp. 388, 390 (S.D.W.Va.1994) (Haden, C.J.) (citing *Heston v. Marion County Parks & Recreation Comm'n*, 181 W.Va. 138, 381 S.E.2d 253, 256 (1989) (per curiam); *Shepherdstown Volunteer Fire Dep't v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 637–38, 309 S.E.2d 342, 351–52 (1983)), *aff'd*, 60 F.3d 825, 1995 WL 391958 (4th Cir.1995).

■ Defendants argue Plaintiff's WVHRA claim must be dismissed because Plaintiffs failed to state facts to show the alleged discrimination was severe or pervasive; the conduct occurred because of Carroll K.'s gender; and Defendants had actual notice. The Court has already resolved the last two arguments in Plaintiffs' favor. Section II.B., *supra*, pp. 4–6. Defendants may have abandoned the first argument by failing to raise it in their reply memorandum. Alternatively, the Court finds Plaintiffs have alleged sufficient facts, including significant injuries, to state a prima facie case of discrimination.

## E. Negligence

■ Defendants argue Plaintiffs' claims based in negligence must be dismissed because the male student's actions constitute an intervening cause, relieving Defendants from any potential liability for their own alleged negligence. Defendants cite, *inter alia*, *Costoplos v. Piedmont Aviation, Inc.*, 184 W.Va. 72, 399 S.E.2d 654 (1990), which states, "The supervening or intervening cause must be a negligent act or omission which constitutes a

new effective cause, and which operates independently of any other act, making it, and only it, the cause of the injury." *Id.* at 74, 399 S.E.2d at 656. The Court finds this to be an inquiry that must be resolved by factual discovery. Plaintiffs have stated a claim sufficient to survive a motion to dismiss.

### III. CONCLUSION

Accordingly, the Court **ORDERS** Defendants' motion to dismiss **GRANTED** in part and **DENIED** in part.