John DOE, et al.

v.

**SABINE PARISH SCHOOL BOARD, et al.**

**Civil Action No. 97–1963.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Oct. 27, 1998.

Pamela R. Jones, Jennifer B. Drago, Jones, Mitchell & Burch, Shreveport, LA, for Plaintiffs.

Herschel R. Richard, Jr., Robert Kennedy, Jr., Cook, Yancey, King & Galloway, Shreveport, LA, for Defendants.

### *JUDGMENT*

STAGG, District Judge.

After the magistrate judge issued his Report and Recommendation with respect to the motions before the court, plaintiff John Doe, individually and on behalf of his minor child, *moved for and was granted a voluntary* dismissal with prejudice of all claims brought by him. Plaintiff Jane Doe, the parties advise, died in November of 1997. The initial pleadings that were joined in by Jane asserted only a single federal claim, deprivation of liberty without due process. The Second and Third Amended Complaints, which raised other federal claims such as violations of Title IX and the Equal Protection Clause, were filed after Jane's death and do not purport to assert claims on her behalf. Therefore, the only claims remaining before the court are claims asserted by Jane, individually or on behalf of her child, based on state law or an alleged deprivation of federal due process. For the reasons assigned in the Report and Recommendation of the Magistrate Judge previously filed herein, and having thoroughly reviewed the record and the objections filed herein, and concurring with the findings of the Magistrate Judge under the applicable law;

**IT IS ORDERED** that the (1) Motion for Judgment on the Pleadings (Doc. 18) be **GRANTED** by dismissing **WITH PREJUDICE** all federal law claims asserted by Jane Doe, individually or on behalf of her child, and dismissing **WITHOUT PREJUDICE** all state law claims asserted by Jane Doe, individually or on behalf of her child, pursuant to 28 U.S.C. § 1367(c)(3). The Motion to Dismiss Second Amended Complaint (Doc. 31) and Motion to Dismiss Third Amended Complaint (Doc. 47) are deemed moot in light of the voluntary dismissal of all claims asserted in the pleadings that they attack. All claims against all parties having been resolved, the court hereby issues this final judgment in accordance with F.R.C.P. 58.

### REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

### INTRODUCTION

John and Jane Doe, individually and on behalf of their six-year old son ("the Doe child") filed this suit against the Doe child's kindergarten teacher, his .elementary school principal, the Sabine Parish School Board and the parents or guardians of two classmates. They seek relief under 42 U.S.C. § 1983, Title IX and state law stemming from alleged sexual abuse, harassment and battery by the Doe child's classmates and a lack of proper response by the school officials. The original complaint, placed under seal, discloses the actual names of the plaintiffs. The First Amended Complaint repeats the allegations but uses the Doe pseudonyms. The plaintiffs have also filed a Second Amended Complaint and a Third Amended Complaint (Docs. 4, 26 and 44). The defendants responded to the allegations by filing three dispositive motions that are now before the court: (1) Motion for Judgment on the Pleadings (Doc. 18), (2) Motion to Dismiss Second Amended Complaint (Doc. 31), and (3) Motion to Dismiss Third Amended Complaint (Doc. 47). The motions request that the court dismiss the federal claims on the merits and decline to exercise supplemental jurisdiction over the remaining state law claims. For the reasons that follow, the

court recommends that that the motions be granted in part by dismissing all of the plaintiffs' 42 U.S.C. § 1983 claims that rely upon an alleged violation of the Due Process Clause, and denied in all other respects.

## JUDGMENT ON THE PLEADINGS AND RULE 12(B)(6)

A Rule 12(b)(6) motion must be made "before pleading", but if it is not the defense may be raised in the form of a motion for judgment on the pleadings. F.R.C.P. 12(h)(2). Because the defendants filed an answer prior to filing their first dispositive motion, they correctly denominated it as a motion for judgment on the pleadings. The later motions that were filed in response to the amended complaints were filed prior to any answer thereto so were correctly labeled as Rule 12(b)(6) motions. Though the names of the motions may differ, the applicable standard is the same in this case. When a Rule 12(c) motion for judgment on the pleadings raises a post-answer Rule 12(b)(6) defense, the motion should be evaluated under the Rule 12(b)(6) standard for failure to state a claim upon which relief can be granted. *Massachusetts Candy & Tobacco v. Golden Distributors, Ltd.*, 852 F.Supp. 63, 67 (D.Mass.1994); 5A Wright, Miller, *Federal Practice & Procedure: Civil 2d*, §§ 1367, 1369.

A district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Lowrey v. Texas A & M Univ. System*, 117 F.3d 242, 247 (5th Cir. 1997). A Rule 12(b)(6) motion may be used to challenge the entire complaint or only part of a pleading, such as a single count or a claim for relief. 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1358; *Drewett v. Aetna Casualty & Surety Co.*, 405 F.Supp. 877 (W.D.La.1975).

## THE ALLEGATIONS

John and Jane Doe enrolled their son in kindergarten at Pleasant Hill Elementary School for the 1996–97 school year. The Doe child was assigned to a class taught by Angela Collins. Collins, assisted by a teacher's aide, was responsible for the class of fewer than 15 students. Among the Doe child's classmates was a child referred to by the parties as the "Brown child", who is the son of defendants Robin Richards and Roy Brown.

The Brown child began to commit acts of sexual aggression upon the Doe child while at school, including "the display of genitals, unwelcome touching of genitals, and acting out sexual acts and trying to get the Doe child to participate." The Doe child tried to complain of one incident to his teacher, Ms. Collins, but she merely reprimanded Doe for moving from his place during nap time. The Brown child continued to commit acts of sexual aggression toward the Doe child, including following him to the restroom and attempting acts of sexual battery. Other children were subjected to similar acts. Collins knew or should have known of the Brown child's actions because they occurred frequently in her classroom, and Collins had available to her a folder on the Brown child that contained information that would have alerted a prudent teacher that the Brown child could become sexually aggressive toward classmates. In fact, the Brown child had been placed in Collins' classroom because he had exhibited acts of sexual aggression toward children in another kindergarten class, generating complaints from children and their parents. Collins, Principal Kenneth Masters and school administrators were aware of that history.

In early October of the fall term, the Doe child complained to his mother that the Brown child was trying to "hump" him, fondle his genitals, and initiate acts of sexual intimacy. The Does attempted to notify Principal Masters immediately and spoke to other school officials the following day. During a series of interviews that followed, the Does discovered that Principal Masters and Collins knew that the Brown child had been sexually aggressive toward other children.

Masters and Collins agreed to implement measures to protect the Doe child, including separation of the two students in the classroom and on the school bus. The protective measures were not carried out on a consistent basis, resulting in continued acts of sexual aggression.

The Doe child began to feel unsafe and to develop symptoms of serious emotional distress. The Does sought help for these emotional problems from Principal Masters and the school counselor. The counselor, however, refused to assist because of her knowledge of the Brown child's history, and Masters refused to help the Does find other assistance within the school system. Masters also repeatedly told the Does that he and his staff were not "babysitters" and there was nothing they could do to stop the problem. The Does finally obtained and paid for counseling on their own.

The 1996–97 school year ended and the Doe child's emotional health seemed to improve over the summer, but it declined rapidly when the 1997–98 school year began. Within the first weeks of school there were altercations between the Doe child and the Brown child. The Brown child's 14 year old brother, who is referred to herein as the "Richards child" [1], also began to exhibit sexually aggressive conduct, including exposure and sexual intimidation, toward the Doe child and other students, both at school and on the bus. Both the Richards child and the Brown child battered the Doe child and encouraged others to do the same. This lawsuit was filed on October 1, 1997, soon after the school term began.[2]

## THE SECTION 1983 CLAIMS

### Introduction

Ms. Collins, Principal Masters and the Sabine Parish School Board argue that the Does cannot state a § 1983 due process claim against them for failure to protect the Doe child from the acts of *private* persons such as his classmates. They attempt to distinguish cases that have upheld claims against school administrators for failure to protect students from abuse at the hands of other state actors, such as teachers. The plaintiffs respond that the Fifth Circuit permits a cause of action against school supervisors who are deliberately indifferent to a student's constitutional liberty interest in his bodily integrity, regardless of whether the actual abuser was acting under color of state law. Resolution of this issue requires a careful review of the Supreme Court's *DeShaney* decision and several Fifth Circuit opinions that have followed it in the unfortunate, but rapidly developing, field of school-child abuse litigation.

### The Effect of DeShaney

The discussion of the Constitutional claims must begin with *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Despite overwhelming evidence of child abuse that came to light during an approximate two-year period, social services authorities continued to allow Joshua DeShaney's father to maintain custody of Joshua. Eventually, Joshua's father beat him so severely that he fell into a life-threatening coma. Emergency brain surgery revealed a series of hemorrhages caused by injuries to the head inflicted over a long period of time. Joshua's brain damage was so severe that he was expected to spend his life confined to an institution for the profoundly retarded. Joshua and his mother sued the various county authorities involved and alleged that they deprived Joshua of his liberty without due process of law, in violation of the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence of which they knew or should have known.

In reviewing the case, the Supreme Court first noted that the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.,* 109 S.Ct.

---

1. The Richards child is the son of Nathan Richards (a dismissed defendant) and lives with his grandparents, defendants J.B. Richards and Lula Richards (whose names are misspelled in the complaint).

2. This portion of the opinion is merely a summary of the many allegations made by the plaintiffs. As the court addresses particular legal issues, it will refer to or take into consideration other specific allegations as may be relevant.

at 1003. It forbids the state itself to deprive individuals of protected interests without due process, but its language does not impose "an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* The Court affirmed summary judgment for the defendants, stating:

> As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.*, 109 S.Ct. at 1004. Thus, *DeShaney* appears to defeat the claim that the defendants violated the Doe's due process rights by failing to protect the Doe child from private violence committed by the Brown and Richards children.

Two often litigated "exceptions" to *DeShaney* have since emerged: the "custodial relationship" exception and the "state-created danger" theory. The Does rely in their memoranda on a third argument that is not as well developed but has received some recognition in the Fifth Circuit. They contend that the school officials themselves are the "state actors" who perpetrated an independent constitutional tort by virtue of their deliberate indifference to the Doe child's liberty interest in bodily integrity, making it irrelevant that the actual abusers were not state actors. The Does have not articulated in their memoranda an express argument for the application of either the "custodial relationship" or the "state-created danger" theory, but each warrants discussion now lest they be invoked in later stages of the litigation, and to provide context to the Does' "deliberate indifference" argument.

### State–Created Danger Exception

Plaintiffs often seek to avoid *DeShaney* by arguing entitlement to the "state-created danger" theory, which the Fifth Circuit has yet to adopt or reject. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir.1997) ("The state-created danger theory has not been adopted in this Circuit.") Thus far, the Fifth Circuit has decided all cases in which the theory has been pleaded by holding that the facts did not support a claim even if the theory were adopted. *See Doe v. Hillsboro*

*Independent School District*, 113 F.3d 1412, 1415 (5th Cir.1997) (en banc) (facts did not trigger a duty, "even if we were to adopt such a theory"), *Johnson v. Dallas Independent School District*, 38 F.3d 198, 201 (5th Cir.1994), *cert. denied*, 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995) (even if the theory is constitutionally sound, the pleadings in the case fell short of the "demanding standard" for liability).

■ If the theory is constitutionally permissible, to find liability "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Doe v. Hillsboro*, 113 F.3d at 1415. The plaintiff in *Doe v. Hillsboro*, a school girl, alleged that the school district placed her in the same area as a custodian (who had no known criminal record), with teachers in the same building but not in the immediate area. She was raped by the custodian. The Court held that those facts did not trigger a duty under the state-created danger theory. In *Johnson*, a student was shot and killed by a non-student who was permitted to enter the high school campus without wearing a required ID badge, and whose concealed handgun was not discovered because the school was not using its metal detectors. Those facts also failed to state a claim under the theory. In *Randolph v. Cervantes*, the court affirmed summary judgment rejecting a claim that administrators of an apartment complex for mental health patients did not prevent a resident from retrieving a used insulin syringe from a garbage can and injecting insulin into each of her eyes.

The defendants in this case are not alleged to have actually created (as opposed to merely failing to prevent) any dangerous environment or to have used their authority to create for the perpetrators of the abuse an opportunity that would not otherwise have existed. The claims against these defendants are no more egregious than those that have failed to withstand scrutiny by the Fifth Circuit, nor are they as egregious as the acts committed by the defendants in the several

cases from other circuits cited in *Doe v. Hillsboro* and *Johnson* in which state-created danger claims were recognized. *See, e.g., Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (police arrested drunk driver and left his female passenger alone on the street in a high crime neighborhood, where she was raped) and *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990) (state placed prisoner with a violent criminal history in a work program at town hall under supervision of untrained employee; prisoner abducted a city employee and held her hostage for three days).

█ The Fourth Circuit recently conducted an exhaustive analysis of the state-created danger theory in *Pinder v. Johnson,* 54 F.3d 1169 (4th Cir.1995) (en banc), *cert. denied,* 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995), a case with facts at least as tragic as these. Plaintiff was attacked by her former boyfriend, whom police arrested. A policeman, aware of the boyfriend's propensity for violence and criminal record for attempted arson of plaintiff's residence, assured plaintiff that the boyfriend would be locked up overnight. The boyfriend was released that evening and returned to plaintiff's house and set fire to it. Plaintiff's three children died in the fire. Despite the affirmative assurances of the defendant, the court found that no clearly established constitutional right had been violated. The *Pinder* defendant's affirmative assurances, which would have granted at least as much comfort as the meetings with school administrators could have afforded in this case, were held insufficient to create or enhance the danger. The Does' claims likewise fail to satisfy the demanding standards of the theory (which they have not argued), assuming its existence.

### Custodial Relationship Exception

In *DeShaney,* the court recognized that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* 109 S.Ct. at 1004. The only examples recognized by the Court

were incarcerated prisoners, involuntarily committed mental patients and suspects in police custody who are in need of medical care due to injuries incurred while being apprehended. The Court explained that the rationale behind extending due process protections to such persons was that the State had affirmatively exercised its power to so restrain the individual's liberty that the person was unable to care for himself. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* 109 S.Ct. at 1005–6.

█ In applying *DeShaney,* the Fifth Circuit has held that the type of "special relationship" that entitles a citizen to enjoy a clearly established constitutional right to state protection from known threats of harm by private actors does not apply to the student/public-school relationship and "only arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power." *Walton v. Alexander,* 44 F.3d 1297, 1299 (5th Cir. 1995) (en banc) (failure of superintendent of residential institution for the deaf to protect student from molestation by classmate did not violate Due Process Clause). "Absent [such] a 'special relationship', the state has no duty to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor." *Id.* at 1306; *See also, Doe v. Hillsboro* (en banc) ("We decline to hold that compulsory [school] attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors" because such laws "are not analogous to the restraints of prisons and mental institutions."). Thus, there is no relief in the Fifth Circuit for the Does under the custodial relationship exception, which they have not argued.

### Deliberate Indifference Theory

The plaintiffs argue that the Fifth Circuit permits a due process claim against school officials whose deliberate indifference causes

the abuse of a student, even if the abuser is not a state actor. One of the early arguments for such a standard was the specially concurring opinion of Judges Parker and Stewart and Chief Judge Politz in *Walton, supra.* They argued that school supervisors should be subject to liability if their deliberate indifference to the safety of a student resulted in an assault by other students. The three concurring judges read the en banc majority to foreclose their argument, however, writing:

> Following [the majority] decision, parents should be aware when the school bus doors close that if their child is sexually or physically assaulted, the driver of the bus has no constitutional duty to intervene, stop the assault, summon assistance, or attend to any injuries that may have been sustained. Under the majority's reasoning, he may with full knowledge of the assault be totally indifferent to it.

*Walton,* 44 F.3d at 1309. This was no mere hyperbole. The en banc majority had just overruled expressly, to the extent that it was contrary to *DeShaney* and *Walton, Lopez v. Houston Independent School District,* 817 F.2d 351 (5th Cir.1987), where a panel held that a bus driver's failure to protect one child from injury inflicted by another child could support a § 1983 action if his failure "rose to the level of callous indifference and was a cause of injury." *Walton,* 44 F.3d at 1303, n. 4.[3]

The en banc court again addressed a student sexual abuse case in *Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.) (en banc), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) in which the plaintiff alleged that school administrators failed to prevent her high school teacher from sexually molesting her. The Court first determined that students have a Due Process liberty interest in their bodily integrity that is violated when a child is sexually abused by a school employee. The Court then turned to whether school officials "owe any duty to a school child when a *subordinate* violates the child's constitutional rights". *Id.* at 452 (emphasis added). After

reviewing its supervisor liability jurisprudence, including the overruled *Lopez,* the Court adopted a three-prong test under which "[a] supervisory school official can be held personally liable for a *subordinate's* violation of [a] ... student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that":

1. The defendant learned of facts or a pattern of inappropriate sexual behavior by a *subordinate* pointing plainly toward the conclusion that the *subordinate* was sexually abusing the student; and

2. The defendant demonstrated *deliberate indifference* toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

3. Such failure caused a constitutional injury to the student.

*Id.* at 454 (emphasis added). There are summary descriptions of the test in other parts of the opinion that could make it appear to be of more broad application, but the facts and the emphasized language make clear that the holding is limited to liability for failure to supervise a subordinate, another state actor. The court also recognized that state action by the abuser was important, rejecting in footnote four the argument that the abusive teacher's acts were not sufficiently related to school activities to be under color of state law. *See also, Leffall,* 28 F.3d at 528 ("*Doe* concerned only the proper scope of school officials' constitutional duties when one of their subordinates violates a student's rights.").

*Doe v. Taylor* spawned several more opinions that tested the contours of its test, including *Becerra v. Asher,* 105 F.3d 1042 (5th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997). The plaintiffs pin all of their due process hopes on language in an order that denied rehearing in that case. The *Becerra* plaintiffs alleged that school officials were liable for failing to prevent the abuse of an eleven-year old stu-

---

**3.** *See also, Leffall v. Dallas Independent School District,* 28 F.3d 521, 527 (5th Cir.1994) ("It is unclear how much of *Lopez'* rationale survives *DeShaney.*")

dent by his music teacher. School officials argued that there was no state action because the teacher, although a state actor, committed the abuse at the child's home during non-school related visits that occurred more than five months after the child withdrew from the school where the abuser taught. The panel discussed footnote four of *Doe v. Taylor,* in which the en banc court had recognized the importance of state action to such a claim, as well as Judge Higginbotham's concurring opinion in *Doe v. Taylor* which treated the state action element as necessary to the claim.

The *Becerra* court concluded that, "[b]ecause [the teacher's] physical sexual abuse of Juan did not occur under color of state law, there was no state action and no violation of Juan's constitutional rights. It necessarily follows that, without an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors." *Id.* at 1047–48 (emphasis in original). The plaintiffs filed a petition for rehearing which was denied but generated a short per curiam opinion upon which the Does base their claim. The *Becerra* panel wrote, with respect to the portion of its opinion that includes the language quoted above, that:

> "[It] should not be read to preclude a determination that, given a real nexus, school supervisors who are deliberately indifferent to a student's constitutional liberty interest in her bodily integrity are themselves the state actors who perpetrated the constitutional tort, regardless of whether the individual who actually made illicit physical contact with the student was acting under color of state law."

*Id.* at 1048.

Six weeks later the en banc Court issued its opinion in *Doe v. Hillsboro, supra,* which stemmed from the rape of an eighth grader by a custodian. Pertinent to this case, the plaintiffs did not argue that the custodian acted under color of state law. Rather, they asserted that the school administrators breached a constitutional duty in failing to protect the child from the rape.[4] The Court wrote that, "Unlike *Doe v. Taylor,* in which a school employee acted under color of state law, this case requires us to locate the primary constitutional wrong in the board and the school officials." *Id.* at 1416. The Court then framed the issue, however, as whether the decision to hire the custodian without an adequate background check amounted to deliberate indifference.[5] Because the custodian was not alleged to have a prior record or history of misbehavior, the Fifth Circuit found no liability for the hiring decision. The Court noted that recognition of potential liability for hiring decisions under *Bryan County* "does not entail endorsement of the view that defendants such as the [school district] have a duty to protect students from threats from other sorts of third parties". *Id.* at 1416.

Judges Wiener, Benavides, Dennis and Chief Judge Politz specially concurred and expressed puzzlement by the majority's failure to discuss "the potential liability of public school supervisors for breach of the negative or passive duty not to be deliberately indifferent to post-hiring reports and complaints of misconduct that presages violations of students' constitutional rights of bodily integrity." *Id.* at 1417–18. The concurring judges described that failure as a "bothersome void" in the majority's opinion but noted their understanding that:

> [N]othing in today's majority opinion lessens or curtails the ability of the law to conclude that public school supervisors, as state actors, are the actual perpetrators of the violation of a student's constitutional right to bodily integrity when evidence is sufficient to demonstrate that there is a 'real nexus' between the violation suffered by the student and such supervisors' delib-

---

4. The Court rejected a special relationship claim and the application of the state-created danger theory.

5. The Court applied *Board of the County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), which held that where scrutiny of a job applicant's background would lead a reasonable policy maker to conclude that the plainly obvious consequences of hiring the applicant would be the deprivation of a third party's constitutional rights, then the municipal authority may be liable for his "deliberate indifference".

erate indifference to reports or complaints of abuse.

*Id.* at 1418.

■ This court must determine from the precedents discussed above whether it should dismiss the Does' due process claims. There is language in the *Becerra* per curiam on denial of rehearing and in the *Doe v. Hillsboro* concurring opinion that could be interpreted to support the claim. Despite the speculations in those opinions that such a claim might be permitted, this court finds that the majority en banc opinions in both *Doe v. Hillsboro* and *Walton* foreclose maintenance of a due process claim in this case. *Walton,* where a school official was sued for failing to protect a student from molestation by a classmate, bears the closest resemblance to the facts pleaded in this case. The majority dismissed the due process claim for lack of a special relationship, absent which "the state has no duty to protect a person under the Due Process Clause of the Fourteenth Amendment from violence at the hands of a private actor." *Walton,* 44 F.3d at 1306. Furthermore, the concurring opinion in *Walton* read the majority decision as rejecting outright the deliberate indifference standard advocated by the concurring judges (and these plaintiffs). *Id.* at 1309. Any attempt to apply the *Becerra* language to this case is trumped by the more factually-similar en banc *Walton* and is further undermined by the subsequent *Doe v. Hillsboro* en banc opinion. As for the optimism of the four judges concurring in *Doe v. Hillsboro* that the theory advocated by the plaintiffs was not curtailed by the majority opinion, the ten judges that joined the majority were rather clear that their recognition of potential liability for hiring decisions did not endorse the view that a school district has a duty to protect students from other sorts of third parties. *Id.,* 113 F.3d at 1416.

■ Finally, a district court should be reluctant when addressing sensitive constitutional issues to read appellate decisions in an overly broad fashion. The language in *Becerra* and the *Doe v. Hillsboro* concurrence should, accordingly, be limited to the facts of those cases to the extent that they are controlling law. Both cases involved situations where the school employed an abuser who just happened to not be engaged in state action at the actual moment of the abuse. Subjecting school officials to liability for deliberate indifference to the acts of its employees, whether committed on or off duty, is at least one step away from subjecting officials to liability for failure to supervise purely private persons who harm a student.

The plaintiffs have not cited and the court is not aware of a single decision from within the Fifth Circuit that has actually recognized a due process claim under similar facts.[6] This court, cautious to avoid unwarranted overextension of Fifth Circuit precedent, finds that the due process claim may not proceed under the current law of this circuit.

## TITLE IX

■ The Does assert a claim under Title IX against the Sabine Parish School Board. Title IX provides in pertinent part that, "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action in which the injured party may seek money damages. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

The Does complain that the school board, which receives federal financial assistance, is liable because it knew of the peer harassment through complaints lodged with the teacher, the principal, and the superintendent of schools, yet failed to take corrective

---

6. *See Doe v. Richardson Independent School District,* 1998 WL 75877, \*2 (N.D.Tex.1998) in which a kindergarten teacher was sued for failing to protect one student from sexual abuse by another kindergartner. In the course of its opinion that granted summary judgment for the teacher, the Court wrote that, "every court presented with the opportunity to extend [the right to bodily integrity] to encompass harm inflicted on a person by a private actor outside the context of involuntary confinement has refused to so hold."

action. The Does also claim liability for gender discrimination because, "Despite having actual knowledge that the Doe child was a victim of peer sexual harassment, Defendants refused to transfer the Brown child into another class because he had been sexually aggressive toward a female student in that class." *See* Third Amended Complaint, ¶ 2.

█ It is well settled that sexual harassment of a student, if it is perpetrated by a teacher or other employee of the recipient of federal funds, can render the recipient liable for damages under Title IX. *See Franklin v. Gwinnett, supra.* A more difficult issue is whether a school can be liable for failing to remedy known sexual harassment of one student by other students, known as peer harassment.[7] After these motions were briefed the Supreme Court granted certiorari to decide "[w]hether Title IX ... encompasses a cause of action for peer hostile environment sexual harassment." *Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390 (11th Cir.1997), *cert. granted in part,* — U.S. ——, 119 S.Ct. 29, 141 L.Ed.2d 789, 1998 WL 663332 (Sept. 29, 1998).

The only Fifth Circuit opinion to have addressed a peer harassment case is *Rowinsky v. Bryan Independent School District,* 80 F.3d 1006 (5th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996). Two eighth-grade girls alleged that they were subjected to continual sexual harassment and assaults by various male students while riding the bus and at school. The Court framed the issue on appeal as whether Title IX imposes liability on a school district for peer hostile environment sexual harassment. It held as follows:

In the case of peer sexual harassment, a plaintiff must demonstrate that the school district responded to sexual harassment claims differently based on sex. Thus, a school district might violate title IX if it

treated sexual harassment of boys more seriously than sexual harassment of girls, or even if it turned a blind eye toward sexual harassment of girls while addressing assaults that harmed boys.

*Id.* at 1016.[8]

We must await the Supreme Court's decision in *Davis* to know whether it will recognize, and what standard it will adopt, for peer harassment claims. We do know, however, the standard for imposing liability upon the school district for teacher-student harassment. In *Gebser v. Lago Vista Independent School District,* — U.S. ——, ——, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998) the court ruled that in cases that do not involve official policy of the school district,

a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school district's] behalf has actual knowledge of discrimination in the [school district's] programs and fails adequately to respond.

Moreover, "the response must amount to deliberate indifference to discrimination." *Id.*

*Gebser* at least implies that the *Rowinsky* standard may be incorrect. At least one district court has said post-*Gebser* that it sees no reason to distinguish and formulate a different rule for student-student sexual harassment. *Adusumilli v. Illinois Institute of Technology,* 1998 WL 601822 (N.D.Ill. 1998). *See also, Carroll K. v. Fayette County Board of Education,* 19 F.Supp.2d 618, 1998 WL 565930 (S.D.W.Va.1998) (applying *Gebser* to student-student harassment claim against school district). On the other hand, the *Gebser* opinion carefully limits its express scope to teacher-student harassment cases. This court need not reconcile *Gebser* and *Rowinsky* today because the plaintiffs plead

---

7. *See* Emmalena K. Quesada, *Innocent Kiss or Potential Legal Nightmare: Peer Sexual Harassment and the Standard for School Liability Under Title IX,* 83 Cornell L.Rev. 1014 (1998) and Kathy Lee Collins, *Student–to–Student Sexual Harassment Under Title IX: The Legal and Practical Issues,* 46 Drake L.Rev. 789 (1998). Both articles were written before the Supreme Court's *Gebser* opinion, discussed *infra.*

8. Other courts have come to different conclusions on the issue. *See Doe v. University of Illinois,* 138 F.3d 653, 660–61 (7th Cir.1998); *Bosley v. Kearney R–1 School District,* 140 F.3d 776, 779 n. 2 (8th Cir.1998) and *Oona R.S. by Kate S. v. McCaffrey,* 143 F.3d 473, 476–77 (9th Cir.1998) collecting cases on the issue and noting the split in the circuits.

facts sufficient to satisfy the modest requirement of Rule 12(b)(6) under either standard. If *Davis* eliminates the claim or changes the standard, the court can revisit this interlocutory decision. *See* F.R.C.P. 54(b) (interlocutory order is "subject to revision at any time before entry of judgment".)

■ The plaintiffs allege that they notified the Sabine Parish Superintendent of Schools, who is the chief executive officer of the school board, of the sexual harassment. Plaintiffs do not use the precise words "deliberate indifference" in describing the board's response, but they do allege that the board was "indifferent and unresponsive" and that the lack of response amounted to "reckless indifference" by the board. *See* Second Amended Complaint, ¶ 9(e). That satisfied *Gebser*.[9]

As for *Rowinsky*, the plaintiffs allege that the board responded to the harassment claims differently based on the sex (male) of both the victim and the abuser.[10] The plaintiffs allege that the board was indifferent "in part because the sexual harassment was being committed by another male child." In contrast, the board was responsive when a female student complained that the Brown child committed similar acts of harassment against her. Second Amended Complaint, ¶ 9(e). These allegations satisfy *Rowinsky*'s requirement that the district have "responded to sexual harassment claim differently based on sex". *Id.* at 1016.

## OTHER CLAIMS

The pleadings, and the second amended complaint in particular, invoke other theories of liability such as the Equal Protection Clause, failure to provide counseling services under Title IX regulations, and state law claims. The defense motions purport to attack all federal claims but specifically address only the Due Process and Title IX claims discussed above. The plaintiffs did not fully brief any claims not directly attacked in the motions. The court will not address those claims unless and until it becomes procedurally proper to do so.

Accordingly;

**IT IS RECOMMENDED** that the (1) Motion for Judgment on the Pleadings (Doc. 18); (2) Motion to Dismiss Second Amended Complaint (Doc. 31); and (3) Motion to Dismiss Third Amended Complaint (Doc. 47) be **GRANTED IN PART** by dismissing all of the plaintiffs' 42 U.S.C. § 1983 claims that rely upon an alleged violation of the Due Process Clause, and **DENIED IN ALL OTHER RESPECTS.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Oct. 5, 1998.

---

9. *See Morse v. Regents of University of Colorado,* 154 F.3d 1124, 1998 WL 480102 (10th Cir.1998) (district court's dismissal of *Gebser*-governed claim reversed, even though words "deliberate indifference" not in complaint); and *Carroll K. v. Fayette County Bd. of Education,* 19 F.Supp.2d 618, 1998 WL 565930 (S.D.W.Va.1998) (motion to dismiss *Gebser* claim denied when facts alleged could support "deliberate indifference" even though those words not used in complaint).

10. Same sex harassment is actionable under Title IX. *Doe v. Dallas Independent School District,* 153 F.3d 211, 1998 WL 543882 (5th Cir.1998).